Darrell McCLENTON, Appellant,

v.

The STATE of Texas, Appellee.

No. 10–03–00099–CR.

Court of Appeals of Texas,
Waco.

April 20, 2005.

James Kent Schuster, Hearne, for appellant.

John C. Paschall, Robertson County Dist. Atty., Franklin, for appellee.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

## OPINION

BILL VANCE, Justice.

Darrell McClenton was charged by indictment with the first-degree felony offense of aggravated robbery with the exhibition of a deadly weapon (handgun). A jury found McClenton guilty and assessed his punishment at 24 years' imprisonment and a $10,000 fine. McClenton appeals, raising five issues.

We will overrule all five issues and affirm the trial court's judgment.

### Provision of Recorded Oral Statements

■ In his first issue, McClenton complains that the State did not "provide" his attorney with a copy of his recorded oral statements at least 20 days before trial, as required by article 38.22 of the Texas Code of Criminal Procedure, and that the trial court thus erred in admitting one of the statements (in which McClenton admitted committing the offense) into evidence.

■ Recorded oral statements of an accused, made as a result of custodial interrogation, are not admissible unless: "not later than the 20th day before the date of the proceeding, the attorney representing the defendant is provided with a true, complete, and accurate copy of all recordings of the defendant made under this article." TEX.CODE CRIM. PROC. ANN. art. 38.22, § 3(a)(1), (a)(5) (Vernon Supp. 2004–05). The State is not required to "give" defense counsel a copy of any recorded statements; rather, it is required to "provide access" to the statements. *Lane v. State*, 933 S.W.2d 504, 515–17 (Tex.Crim.App.1996). "So long as defense counsel is informed of the existence of the recording and is permitted reasonable access to a copy, the purpose of § 3(a)(5) has been met." *Id.* at 516.

In this case, the pretrial and trial occurred on February 18, 2003, and at the pretrial, the trial court heard McClenton's motion to suppress his two recorded oral statements (audiotapes) on the ground that the State allegedly had not provided his attorney with copies of the two statements until February 10, 2003, which was within

20 days of trial. McClenton's attorney, who had been appointed on August 27, 2002, told the trial court that he had never been told that copies of the tapes were available for him; that for "two or three months" he had the investigating officer's report that refers to the recorded statements; that about two weeks before he had "re-read" the report and realized that there were two tapes; on February 10 he visited the district attorney's office and obtained copies of the tapes; and that prior to then the tapes had not been "provided" to him.

The district attorney informed the trial court that copies of the tapes (of McClenton and two others charged with the robbery) were made on January 6, 2003; that the copies had been in the district attorney's file and available for defense counsel since then; that his office had an "open-file policy"; that the file had been open since the case was filed; that he furnished defense counsel with the written offense report; and that as far as he knew, McClenton's attorney had knowledge of the tapes and their availability.

Several courts have addressed similar scenarios.[1] For example, in *Tinker v. State*, the defendant argued that his recorded statements were improperly admitted because the State failed to provide defense counsel with copies at least 20 days before trial. *Tinker v. State*, 148 S.W.3d 666 (Tex.App.-Houston [14th Dist.] 2004, no pet. h.). The defense attorney admitted that he was aware of his client's taped statements and that he had free access to his client's file at the district

1. *See also Atnip v. State*, 1998 WL 393970 (Tex.App.-Austin 1998, no pet.) (not designated for publication) (holding that where defense attorney knew tape existed and State asserted that tape was available and defense could have obtained it any time, tape was made available and State did not have to deliver it); *Riley v. State*, 1997 WL 466555 (Tex.App.-Houston [1st Dist.] 1997, no pet.) (not designated for publication) (holding that where defense counsel had transcript and incomplete copy of recorded statement and thus was on notice of existence and content of statement several months before trial, defendant had been "provided" with statement).

attorney's office, but the tapes were not in the file. The prosecutor noted that the tapes are not kept in individual files but are kept in a separate filing cabinet and that defense counsel could have obtained them from that cabinet. Following *Lane,* the court of appeals found: "Nothing in the record indicates defense counsel specifically requested or was denied access to the tape recorded statements at any time prior to trial. Where, as here, defense counsel is aware of the existence of taped statements, the State is only required to 'permit reasonable access' to a copy." *Id.* at 673.

Likewise, we read McClenton's trial attorney's statements to the trial court to be that he was aware of the recorded statements two to three months before trial and that he knew he had access to them. We thus follow *Lane* and hold that the State "provided" the tapes because McClenton's trial attorney was aware of the recorded statements and had access to them. *Lane,* 933 S.W.2d at 516. We overrule the first issue.

### Victim–Impact Testimony

■ McClenton's second issue complains that the trial court erred in admitting "victim-impact" testimony during the guilt-innocence phase of the trial. Specifically, he complains of the following State-elicited testimony of Diane Kempenski, the clerk of the convenience store (the A–1 Drive In) allegedly robbed by McClenton and three others:

Q. Now, were you placed in fear of imminent bodily injury or death by these defendants who robbed the A–1 Drive In?

A. Yes, sir.

Q. Tell the jury how you felt while this robbery was going.

A. I though they were going to kill me. I kept telling them, you know, "Please don't kill me, just take whatever you want." When you've got a gun to your face, it's hard.

Q. Are you still working there at the A–1?

A. Yes, I am.

Q. How do you feel now working there after August 18? Is it any different from the way you felt before August 18?

A. Yes, sir, it is. .

[DEFENSE ATTORNEY] Judge, I'm going to object to relevance.

THE COURT: Overruled.

Q. Describe that feeling that you have now that you did not have prior to your encounter with those four individuals who robbed you?

[DEFENSE ATTORNEY] Judge, I am going to again object to relevance and would ask for a running objection.

THE COURT: Running objection is noted, same is overruled.

A. Do I answer it?

Q. Yes.

A. Well, now I am more cautious who comes in. I watch more. I stay more around the register. I don't go to my cooler hardly at all once night comes. I wait until—I lock the doors before I do anything, because I'm really afraid. It's a bad feeling when you see somebody walk up while I'm doing something or turn around and somebody is there. It just startles me, you know. I think it's somebody else trying to come in and do the same thing. It's just not the same.

■ Relying on *Stavinoha v. State,* McClenton urges that this testimony was irrelevant and inadmissible and that the trial court abused its discretion in overruling his objections and admitting the testi-

mony.[2] *See Stavinoha v. State,* 808 S.W.2d 76, 78 (Tex.Crim.App.1991) (citing *Miller–El v. State,* 782 S.W.2d 892, 895 (Tex.Crim.App.1990)). The crime's after-effects on the victim is not relevant at the guilt-innocence phase. *Garrett v. State,* 815 S.W.2d 333, 337–38 (Tex.App.-Houston [1st Dist.] 1991, pet. ref'd) (citing *Miller–El*).

We agree with McClenton (and with the State's concession)[3] that Kempenski's testimony about how she felt after the robbery was irrelevant and that the trial court abused its discretion in overruling McClenton's relevance objections and admitting this testimony.

 Having found error, we must conduct a harm analysis under Rule 44.2(b) of the Texas Rules of Appellate Procedure, which provides that a nonconstitutional error "that does not affect substantial rights must be disregarded." Tex. R.App. P. 44.2(b); *see Motilla v. State,* 78 S.W.3d 352, 355 (Tex.Crim.App.2002). While we consider the harm, if any, caused by the admission of the testimony, we will disregard any error that does not affect a substantial right of the defendant. *Id.; Haynes v. State,* 85 S.W.3d 855, 859 n. 4 (Tex.App.-Waco 2002, pet. ref'd). "A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict." *King v. State,* 953 S.W.2d 266, 271 (Tex.Crim.App.1997) (citing *Kotteakos v. United States,* 328 U.S. 750, 776, 66 S.Ct. 1239, 1253, 90 L.Ed. 1557 (1946)). We do not reverse if, "after examining the record as [a] whole, [we have] fair assurance that the error did not influence the jury, or had but a slight effect." *Johnson v. State,* 967 S.W.2d 410, 417 (Tex.Crim.App.1998); *see also Schutz v. State,* 63 S.W.3d 442, 444 (Tex.Crim.App.2001). The reviewing court should consider everything in the record, including all the evidence admitted, the arguments, and voir dire. *Motilla,* 78 S.W.3d at 355–57. The strength of the evidence of guilt, especially if it is overwhelming, is a factor to be considered. *Id.* at 356–58; *Haynes,* 85 S.W.3d at 859 n. 4. However, if we have "grave doubt" about whether the error did not affect the outcome, then the error is treated as if it did affect the outcome. *Thomas v. State,* 137 S.W.3d 792, 796 (Tex.App.-Waco 2004, no pet.) (citing *Fowler v. State,* 958 S.W.2d 853, 865 (Tex.App.-Waco 1997), *aff'd,* 991 S.W.2d 258 (Tex.Crim.App.1999)).

After examining the evidence as a whole, we conclude that the admission of the testimony had no effect on the jury. *Johnson,* 967 S.W.2d at 417; *Castillo,* 910 S.W.2d at 127–28; *Garcia,* 827 S.W.2d at 30. The record includes McClenton's recorded statement in which he admitted to committing the robbery and holding the gun. This, along with the other testimony linking McClenton to the crime, is more than enough evidence of guilt to render the erroneous admission of the testimony harmless. *See Motilla,* 78 S.W.3d at 357–58. While the State did mention during closing argument the fear that a person would have while being robbed at gunpoint by four masked people, it was not a reference to the victim's irrelevant after-effects testimony, but was in response to the de-

---

**2.** We review a trial court's decision to admit evidence for an abuse of discretion. *Chamberlain v. State,* 998 S.W.2d 230, 237 (Tex. Crim.App.1999); *Gipson v. State,* 82 S.W.3d 715, 721 (Tex.App.-Waco 2002, no pet.).

**3.** In its brief, the State "concedes that this question did elicit testimony from the victim regarding the after-effects of Appellant's crime" and that "victim impact testimony is, as a general rule and in and of itself, irrelevant to the issue of Appellant's guilt and is more commonly viewed as a proper consideration during the punishment phase of the trial."

fense's closing argument in which the victim's credibility was attacked over her description of the robber who "scared the hell out of her with a gun."

We cannot say that we have "grave doubt" about whether the error affected the outcome. *Thomas,* 137 S.W.3d at 796. Given the strength of the evidence of guilt, we find the erroneous admission of the testimony harmless. *Motilla,* 78 S.W.3d at 357–58; *cf. Garrett,* 815 S.W.2d at 338. Accordingly, we overrule McClenton's second issue.

### Confrontation–Clause Violation

█ McClenton asserts in a third issue that the trial court erred in admitting hearsay testimony by Officer Jerry Stover relating to statements made to Stover by two of McClenton's codefendants and accomplices, Charlie Smith and Patrick Johnson. McClenton alleges that this hearsay testimony violated his Confrontation–Clause rights under the Sixth Amendment.

█ The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to ... be confronted with the witnesses against him." U.S. CONST. amend. VI. The Confrontation Clause's central concern is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversarial proceeding before the trier of fact. *Lilly v. Virginia,* 527 U.S. 116, 123–24, 119 S.Ct. 1887, 1894, 144 L.Ed.2d 117 (1999). The United States Supreme Court recently held that testimonial statements of witnesses absent from trial are admissible over a Sixth Amendment Confrontation Clause objection only where the declarant is unavailable and only where the defendant has had a prior opportunity to cross-examine. *Crawford v. Washington,* 541 U.S. 36, 59, 124 S.Ct. 1354, 1368–69, 158 L.Ed.2d 177 (2004). The Sixth Amendment right of confrontation is a fundamental right and is applicable to the states by virtue of the Fourteenth Amendment. *Shelby v. State,* 819 S.W.2d 544, 546 (Tex. Crim.App.1991) (citing *Pointer v. Texas,* 380 U.S. 400, 403, 85 S.Ct. 1065, 1068, 13 L.Ed.2d 923 (1965)). We review de novo the trial court's ruling that the admission of Stover's testimony did not violate McClenton's Confrontation–Clause rights. *Lilly,* 527 U.S. at 136–37, 119 S.Ct. at 1900.

█ Statements taken by police officers in the course of interrogations are testimonial. *Crawford,* 541 U.S. at 52, 124 S.Ct. at 1364. Stover investigated the aggravated robbery of the A–1 Drive In. In addition to obtaining two recorded statements from McClenton, he obtained recorded statements from Smith and Johnson, both of whom implicated themselves and McClenton in the robbery. Under *Crawford,* the recorded statements of Smith and Johnson made to police during custodial interrogation constitute testimonial evidence. *Id.* The State agrees that their statements are "testimonial" and that *Crawford* applies, but it argues that McClenton "opened the door" by first asking Stover on cross-examination about Smith's statement:

Q. You actually had an opportunity to talk to Charlie Smith in the Brazos County Jail?

A. Yes, sir.

. . .

Q. You talked to him there in the Brazos County Jail about the circumstances surrounding this case, is that correct?

A. Yes, sir.

Q. And that was your intent to do so?

A. Yes, sir.

Q. And in your conversations with Mr. Smith, did he indicate that someone other than Darrell McClenton was wielding the pistol?

A. Yes, sir.

Q. In fact, he indicated that someone other than Darrell McClenton was actually the first one into the store, correct?

A. This is Mr. Smith's testimony?

Q. Yes, sir.

A. Yes, sir.

On redirect examination, the State asked Stover more questions about *Smith's* statement, but it also began asking questions about *Johnson's* statement, about which McClenton had not cross-examined Stover. Over McClenton's hearsay and Confrontation–Clause objections and his assertion that he had not opened the door as to Johnson's statement, the trial court allowed Stover to testify that Johnson said in his statement that McClenton held the gun in the robbery (which McClenton admitted in his own statement), that Smith was the driver, and that they had gone to a Bremond housing complex before the robbery (which McClenton denied in his statement).

■ Otherwise inadmissible evidence may be admitted if the party against whom the evidence is offered "opens the door," but the party offering the evidence may not "stray beyond the scope of the invitation." *Schutz v. State,* 957 S.W.2d 52, 71 (Tex.Crim.App.1997) (quoting *Bush v. State,* 773 S.W.2d 297, 301 (Tex.Crim. App.1989)); *see Clay v. State,* 102 S.W.3d 794, 797 (Tex.App.-Texarkana 2003, no pet.); *Bell v. State,* 867 S.W.2d 958, 962 (Tex.App.-Waco 1994, no pet.). It is not error to admit hearsay evidence in a criminal case over objection when it goes to clarify other hearsay evidence elicited by the opposition. *Bunton v. State,* 136 S.W.3d 355, 367 (Tex.App.-Austin 2004, pet. ref'd).

■ We conclude that McClenton "opened the door" as to Smith's statement and the trial court properly allowed the State to question Stover about Smith's statement, but the court allowed the State to "stray beyond the scope of the invitation" by eliciting testimony from Stover about *Johnson's* statement, over McClenton's objections. McClenton did not have a prior opportunity to cross-examine Johnson about his statement, and it is not disputed that Johnson, who was awaiting trial on the same charge, was unavailable. The admission of a testimonial statement by an accomplice or codefendant as evidence of guilt of the defendant on trial, absent opportunity by the defendant to cross-examine the declarant, is "sufficient to make out a violation of the Sixth Amendment." *Crawford,* 541 U.S. at 68, 124 S.Ct. at 1374. Thus, the trial court's ruling on the admissibility of Stover's testimony as to Johnson's statement violated McClenton's Sixth Amendment Confrontation Clause rights. Stover's testimony about Johnson's statement was not admissible against McClenton, and the trial court erred in ruling otherwise. *See id.*

■ Because a violation of the Sixth Amendment right of confrontation constitutes constitutional error, we must reverse a trial court's judgment when Confrontation–Clause error is present unless we can determine beyond a reasonable doubt that the error did not contribute to the conviction. *See* Tex.R.App. P. 44.2(a) (requiring reversal of constitutional error unless the appellate court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment); *see Wall v. State,* 143 S.W.3d 846, 851–52 (Tex.App.-Corpus Christi 2004, no pet. h.); *Hale v. State,* 139 S.W.3d 418, 422 (Tex.App.-Fort Worth 2004, no pet. h.).

In determining harm from Confrontation–Clause error, we are to apply the factors enunciated in *Delaware v. Van Arsdall*. *See Delaware v. Van Arsdall*, 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986); *Shelby*, 819 S.W.2d at 547, 550–51. The *Van Arsdall* harm factors are the importance of the witness's testimony; whether the testimony was cumulative; the presence or absence of evidence corroborating or contradicting material points of the witness's testimony; the extent cross-examination was permitted; and the overall strength of the State's case. *Van Arsdall*, 475 U.S. at 684, 106 S.Ct. at 1438. If, applying these factors, we cannot determine beyond a reasonable doubt that the Confrontation Clause violation did not contribute to the appellant's conviction or punishment, we must reverse the trial court's judgment. Tex.R.App. P. 44.2(a); *Shelby*, 819 S.W.2d at 546–47. In making this determination, we do not focus on the propriety of the trial's outcome but on calculating, as nearly as possible, the probable impact of the error on the jury in light of the other evidence. *Wesbrook v. State*, 29 S.W.3d 103, 119 (Tex.Crim.App. 2000); *Bratton v. State*, 156 S.W.3d 689, 693 (Tex.App.-Dallas 2005, no pet. h.). In other words, the question is not whether the legally admitted evidence is sufficient to support the conviction. *McCarthy v. State*, 65 S.W.3d 47, 55 (Tex.Crim.App. 2001) (quoting *Satterwhite v. Texas*, 486 U.S. 249, 258–59, 108 S.Ct. 1792, 1798, 100 L.Ed.2d 284 (1988)). Rather, the question is whether the complained-of statement contributed to the jury's verdict, regardless of the sufficiency of the evidence, independent of the statement, to sustain the conviction. *Id.* Asked in another way, the question is whether a reasonable probability exists that the error moved the jury from a state of nonpersuasion to one of persuasion as to the issue in question.

*Wesbrook*, 29 S.W.3d at 119; *Bratton*, 156 S.W.3d at 693.

McClenton was convicted of aggravated robbery. He admitted to the offense and to pointing the gun at Kempenski, the store clerk, in two separate recorded statements with Stover. A witness who lived in Bremond near the store testified that earlier on the evening of the robbery, McClenton (whom she identified in court) and three other black males were in a car that drove up to her and asked her what time the store closed. Another local witness testified and corroborated the testimony regarding descriptions of the car, the four men, and that they asked what time the store closed. Their descriptions of the four men were consistent with Kempenski's descriptions.

In his first recorded statement, McClenton identified three accomplices in the robbery and provided details of it, including that he pointed a loaded gun at the store clerk. When McClenton was later confronted by Stover that one of the alleged accomplices could not have participated in the robbery because he was in prison, McClenton gave a second recorded statement in which he changed the names of two accomplices and asserted that the gun was not loaded.

Stover's testimony about Johnson's statement was largely cumulative of lawfully admitted evidence. There was adequate evidence corroborating McClenton's and Smith's recorded statements confessing to the robbery. One of the witnesses previously knew and identified McClenton as being in Bremond that evening with three other black males and asking her what time the store closed, and a second witness gave similar testimony. On the day after the robbery, after hearing about it, one of the witnesses went to the store and told the owner about seeing and talking to McClenton the night before, and she

later told Stover the same information. And given McClenton's two recorded statements confessing to the robbery, the State overall had a strong case. Disregarding Stover's testimony about Johnson's statement, the lawfully admitted evidence overwhelmingly proved McClenton's guilt. *See Wall*, 143 S.W.3d at 852. Given this case's record, which we have carefully reviewed, we conclude beyond a reasonable doubt that the admission of Stover's testimony about Johnson's statement did not contribute to McClenton's conviction or punishment. *See Bratton*, 156 S.W.3d at 694–95. Accordingly, we hold that the trial court's error was not harmful and thus overrule McClenton's third issue.

### Impermissibly Suggestive Photo Line–Up

In his fourth issue, McClenton says the trial court erred in the punishment phase by admitting an allegedly tainted photo line-up conducted in connection with an extraneous offense (aggravated robbery) allegedly committed by McClenton.

An in-court identification is inadmissible if tainted by an unduly suggestive pretrial identification. *See Loserth v. State*, 963 S.W.2d 770, 771 (Tex.Crim.App. 1998). In determining whether the trial court erred in admitting an in-court identification, we employ a two-step analysis, inquiring: (1) if the pretrial procedure was impermissibly suggestive; and (2) if so, whether the impermissibly suggestive pretrial procedure gave rise to a very substantial likelihood of irreparable misidentification at trial. *See Ibarra v. State*, 11 S.W.3d 189, 195 (Tex.Crim.App.1999); *Delk v. State*, 855 S.W.2d 700, 706 (Tex. Crim.App.1993). It is the risk of in-court misidentification that taints the identification. *See Webb v. State*, 760 S.W.2d 263, 269 (Tex.Crim.App.1988). The defendant

has the burden to show by clear and convincing evidence that the in-court identification is unreliable. *See Delk*, 855 S.W.2d at 706. The admissibility of an identification is a mixed question of law and fact that we review de novo. *See Loserth*, 963 S.W.2d at 773.

In the first step, we evaluate the pretrial photo line-up itself to determine whether it was impermissibly or unduly suggestive. "A lineup is considered unduly suggestive if other participants are greatly dissimilar in appearance from the suspect." *Withers v. State*, 902 S.W.2d 122, 125 (Tex.App.-Houston [1st Dist.] 1995, pet. ref'd) (citing *United States v. Wade*, 388 U.S. 218, 232–233, 87 S.Ct. 1926, 1935, 18 L.Ed.2d 1149 (1967)). A suspect may be greatly dissimilar in appearance from the other participants because of his distinctly different appearance, race, hair color, height, or age. *See id.* (citing *Foster v. California*, 394 U.S. 440, 442–43, 89 S.Ct. 1127, 1128, 22 L.Ed.2d 402 (1969)). But minor discrepancies between line-up participants do not render a line-up impermissibly suggestive. *See id.* (citing *Partin v. State*, 635 S.W.2d 923, 926 (Tex.App.-Fort Worth 1982, pet. ref'd)). The line-up participants need not be identical to satisfy due process requirements. *See Buxton v. State*, 699 S.W.2d 212, 216 (Tex.Crim.App.1985).

McClenton asserts that his photograph in the photo line-up was overly different in characteristics from the other five photographs because the height line of two photographs was not "even close" to the others and the other individual closest in weight to McClenton was 18 pounds heavier than him.

The extraneous-offense aggravated robbery was investigated by Sergeant Vince Angele of the Hearne Police Department, who generated photo line-ups from descriptions that he obtained from the three

complainants (one who was struck on the head with a gun butt and one who was shot in the buttocks). He prepared the photo line-ups using a computer program that generates random photographs based on parameters defined by the user.

We have reviewed the photo line-up that McClenton complains of, and we find that none of the other photographed participants are dissimilar in appearance from McClenton. The six color photographs depict six black males of generally the same age, weight, height, and appearance. The height difference between the tallest and shortest is only four inches, and the height differences are not even readily apparent because of various, slight differences in distances between the camera and the subjects. And because all the photographs depict the subjects from the top of the shoulders and up, the various weight differences are not noticeable. We conclude that the photo line-up is not impermissibly suggestive.

■■■ McClenton also claims that the trial court erred by letting Sergeant Angele and the three alleged victims testify about their prior photo line-up identification of McClenton, by admitting the photo line-ups that all three used, and by then allowing all three to identify McClenton in the courtroom. McClenton asserts that this amounted to "impermissible bolstering." But because McClenton did not object on this ground in the trial court and cites no authority in his brief, this complaint has not been preserved and also has not been adequately briefed, presenting nothing for review. Tex.R.App. P. 33.1(a), 38.1(h); *Tong v. State*, 25 S.W.3d 707, 710 (Tex.Crim.App.2000); *Walder v. State*, 85 S.W.3d 824 (Tex.App.-Waco 2002, order). We overrule McClenton's fourth issue.

### Punishment Charge Error

■■■ McClenton's final issue points to *Huizar v. State* to show that the trial court erred in the punishment-phase charge by not including a reasonable-doubt instruction on the extraneous-offense evidence admitted during the punishment phase. *See Huizar v. State*, 12 S.W.3d 479, 484 (Tex. Crim.App.2000). The State concedes error but notes that McClenton's trial counsel did not object to this charge error, which his appellate counsel concedes.

■■■ An unpreserved complaint about a charge error in a criminal case is reviewed for "egregious harm." *Huizar*, 12 S.W.3d at 484–85; *Almanza v. State*, 686 S.W.2d 157, 171–72 (Tex.Crim.App. 1985). Errors that result in egregious harm are those that affect "the very basis of the case," deprive the defendant of a "valuable right," or "vitally affect a defensive theory." *Hutch v. State*, 922 S.W.2d 166, 171 (Tex.Crim.App.1996) (citing *Almanza*, 686 S.W.2d at 172). In deciding whether egregious harm exists, we look at (1) the charge itself, (2) the state of the evidence, including contested issues, (3) the arguments of counsel, and (4) any other relevant information revealed by the record of the trial as a whole. *Id.* In asserting egregious harm, McClenton focuses on the unadjudicated aggravated robbery that we addressed in McClenton's fourth issue.

McClenton's trial began on February 18, 2004, and the jury found him guilty that day. The guilt-innocence charge did contain a reasonable-doubt instruction for extraneous offenses. The punishment phase began immediately but was not completed until the next day. The State stipulated that McClenton was eligible for community supervision. With a punishment range of 5 to 99 years for aggravated robbery, he received a 24–year sentence.

In his closing, McClenton's trial attorney argued to the jury that for them to consider the unadjudicated aggravated

robbery, they had to believe that it was McClenton who committed that offense "beyond a reasonable doubt," and he then mentioned twice more "beyond a reasonable doubt."

In both phases of the trial there was no mention of any burden of proof other than "beyond a reasonable doubt." McClenton does not argue on appeal that the evidence was insufficient to prove beyond a reasonable doubt that he committed the unadjudicated aggravated robbery, for which he attacked the credibility of the three complainants because of minor discrepancies, their prior drug use, and because they changed their story because the alleged robbery occurred during a drug buy that they did not initially reveal to law enforcement.

Having viewed the entire record, we do not find that "the very basis of the case" was affected or that McClenton was deprived of a "valuable right" as a result of the omitted reasonable-doubt instruction in the trial court's punishment charge. McClenton's fifth issue is overruled.

## Conclusion

Having overruled all of McClenton's issues, we affirm the trial court's judgment.