

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 2-07-457-CR

JOHN ALVAREZ                                                     APPELLANT

V.

THE STATE OF TEXAS                                                    STATE

------------

FROM THE 355TH DISTRICT COURT OF HOOD COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I. INTRODUCTION

Appellant John Alvarez appeals his conviction for possession of methamphetamine of less than one gram. In two points, Alvarez complains that the trial court erred by admitting statements he made without proper *Miranda* warnings and that the trial court erred when it overruled Alvarez's objection to

---

[1] *See* Tex. R. App. P. 47.4.

a videotape because the State had failed to provide the defense with a copy of the videotape within twenty days of the proceedings. We will affirm.

## II. FACTUAL AND PROCEDURAL BACKGROUND

On October 7, 2006, Kristopher S. Hall, a trooper with the Texas Department of Public Safety, noticed that a white Chevy pickup traveling on Farm Road 51 in Hood County had what appeared to be an expired registration sticker. As Trooper Hall slowed and pulled onto the shoulder, he saw in his rear view mirror that the pickup was stopping. Trooper Hall turned around, activated his lights, and pulled in behind the pickup. As Trooper Hall approached the pickup, the driver leaned his head out of the window and asked why he was being stopped. Trooper Hall noticed upon further inspection that the vehicle had two registration stickers and no vehicle inspection sticker.

Trooper Hall explained to the driver that he was stopped because he was required to have an inspection sticker, and the driver seemed to understand. After explaining the offense to the driver, Trooper Hall noticed that the driver maintained a level of nervousness that made Trooper Hall suspicious.[2] Trooper Hall identified Alvarez as the driver that he saw on the date in question.

---

[2] Trooper Hall further testified that Alvarez's hands were shaking "pretty bad" when he handed over his license, that the pulse in the side of his neck was obvious, that he was looking around "quite a bit," and that he was not able to stand still in one place.

2

Trooper Hall wrote Alvarez a citation for the vehicle inspection violation and then asked Alvarez if there was anything illegal inside the vehicle. When Alvarez responded that there was nothing illegal inside the vehicle, Trooper Hall asked for permission to search the vehicle, and Alvarez replied, "Go ahead." During the search of the vehicle, Trooper Hall found in the console a small tin that contained pieces of a meth pipe. Trooper Hall thereafter placed Alvarez in handcuffs, advised him that he was under arrest, and read him his *Miranda* warnings.

Alvarez told Trooper Hall that he did not know anything about the pipe, but later Alvarez said that he had found the pipe on Fort Worth ISD school grounds and had picked it up. Alvarez said that he did not know where he should dispose of the pipe; he later admitted that he had previously used methamphetamine.

The State played a videotape of the stop, which had been recorded by a camera mounted to the windshield in Trooper Hall's patrol car. Afterwards, a forensic scientist from the Texas Department of Public Safety testified that she had scraped the pipe and that the residue contained a trace amount of methamphetamine.

After hearing the above evidence, the jury found Alvarez guilty of the offense of possession of a controlled substance, namely methamphetamine of

less than one gram. The trial court sentenced Alvarez to twenty-four months' confinement; fined him $2,500; suspended imposition of the punishment as it related to the confinement; and placed him on community supervision for five years. This appeal followed.

### III. PROPER *MIRANDA* WARNINGS WERE GIVEN

In his first point, Alvarez argues that the trial court erred by admitting statements he made because the *Miranda* warnings he received were improper. Specifically, Alvarez argues that Trooper Hall failed to question Alvarez as to whether he understood his rights and whether he wished to waive his rights. The State responds that the trial court did not err by admitting Alvarez's videotaped statements into evidence because Alvarez received proper *Miranda* warnings and voluntarily waived his rights.

In reviewing claims of *Miranda* violations, we conduct the bifurcated review articulated in *Guzman v. State*. *Ripkowski v. State*, 61 S.W.3d 378, 381 (Tex. Crim. App. 2001), *cert. denied*, 539 U.S. 916 (2003). We afford almost total deference to the trial court's rulings on questions of historical fact and on application-of-law-to-fact questions that turn upon credibility and demeanor while we review de novo the trial court's rulings on application-of-law-to-fact questions that do not turn on credibility and demeanor. *Id.*

Texas Code of Criminal Procedure article 38.21 states that "[a] statement of an accused may be used in evidence against him if it appears that the same was freely and voluntarily made without compulsion or persuasion. Tex. Code Crim. Proc. Ann. art. 38.21 (Vernon 2005). Texas Code of Criminal Procedure article 38.22 states the following:

> Sec. 3. (a) No oral or sign language statement of an accused made as a result of custodial interrogation shall be admissible against the accused in a criminal proceeding unless:
>
> . . . .
>
> (2) prior to the statement but during the recording the accused is given the warning in Subsection (a) of Section 2 above and the accused knowingly, intelligently, and voluntarily waives any rights set out in the warning[.]

*Id*. art. 38.22, § 3(a)(2) (Vernon 2005).

Trooper Hall testified that he told Alvarez the following:

> I advised him that he had the right to remain silent, not to make any statement at all, and any statement that he made could be used against him in court, and any oral or written statement he made could be used against him at his trial. I advised him that he had a right to have an attorney present to advise him before and during any questioning by peace officers or attorneys representing the State, and then if he was too poor to hire an attorney, one would be appointed by the court to represent him. I then informed Mr. Alvarez that if he chose to answer any questions that I had for him, he was doing so freely and voluntarily, and that he didn't have to answer any questions.

5

Trooper Hall said that he did not ask Alvarez if he wanted to waive his rights because he is not required to and that he did not ask Alvarez if he understood his rights. Trooper Hall said that Alvarez voluntarily waived his rights because "[h]e was informed of his rights, he knew he didn't have to answer questions, and he answered questions."

The jury also watched the videotape of the stop and heard the following:

Trooper Hall: Turn around. Put your hands behind you.

Alvarez: What did I do?

Trooper Hall: Don't move. You have the right to remain silent. Anything you say can and will be used against you in court. Any oral or written statement you make may be used as evidence against you at your trial. You have the right to have an attorney present before you're asked any questions or make any statements to peace officers or attorneys representing the State. If you can't afford to hire one, one will be appointed by the court to represent you. You have the right to terminate the interview at any time. Which means you don't have to answer questions.

Alvarez: [Nodding]

Trooper Hall: If I ask you questions and you choose to answer them, you've done so freely. OK?

Alvarez: [Nodding] Yes, sir.

6

Here, Alvarez does not appear to argue that Trooper Hall failed to give Alvarez the *Miranda* warnings. Instead, Alvarez argues that the trooper never asked him if he understood these rights or was opting to waive these rights by answering questions and that it was impossible to assume that he understood and waived these rights because he is Hispanic. Although Trooper Hall admitted, and the record reflects, that he did not explicitly ask Alvarez if he understood the warnings, the record demonstrates that Trooper Hall received indications that Alvarez understood the *Miranda* warnings because Alvarez nodded twice during the warnings and then responded, "Yes, sir," when Trooper Hall explained that by choosing to answer questions, he would be doing so of his own free will. Trooper Hall also testified, and the video reflects, that Alvarez spoke very good English.

Other than the fact pointed out by Alvarez that he is of Hispanic descent, no facts exist in the record to indicate that Alvarez did not understand the warnings or did not waive the rights mentioned in the warnings. Alvarez never requested a translator or otherwise indicated that he did not comprehend the statements Trooper Hall made. On the contrary, he indicated nonverbally—by nodding—and verbally—by saying, "Yes, sir"—that he understood the *Miranda* warnings that Trooper Hall was giving him.

7

It was for the trial court to view the videotaped stop, hear Trooper Hall's testimony, determine the witnesses' credibility, weigh the testimony given by each witness, and then resolve conflicts between their testimony. We will not second-guess the trial court's determination that Alvarez understood his rights and knowingly and voluntarily gave his statement to Trooper Hall. *See Ripkowski*, 61 S.W.3d at 383–84 (holding that trial court was entitled to believe State's witnesses—officers who testified that they read appellant the required warnings, that appellant nodded his head after each warning was read, and that appellant appeared to understand his rights and to waive those rights voluntarily—rather than appellant's expert, who testified that a combination of stressful conditions, bipolar disorder, and cocaine binging rendered appellant incompetent to understand and waive his rights); *Lopez v. State*, No. 03-02-00453-CR, 2003 WL 1922430, at *2 (Tex. App.—Austin Apr. 24, 2003, no pet.) (mem. op., not designated for publication) (holding that appellant, who spoke limited English, understood his rights when detective explained appellant's rights to him, asked if he understood, and appellant paused and then nodded his head). *But see Reyes-Perez v. State*, 45 S.W.3d 312, 319 (Tex. App.—Corpus Christi 2001, pet. ref'd) (recognizing that communication between officers and appellant solely by "hand gestures" was insufficient to show understanding). We therefore overrule Alvarez's first point.

### IV. DEFENSE TIMELY PROVIDED WITH VIDEOTAPE

In his second point, Alvarez contends that the trial court abused its discretion by denying his motion to suppress the videotape because the State had failed to provide the defense with a copy of the videotape within twenty days of the proceedings. The State responds that the trial court did not abuse its discretion by admitting the videotape of Alvarez's statement because the State made the video recording available to the defense in May 2007 through the State's open file policy, which was months before the case went to trial.

We review a trial court's admission or exclusion of evidence for an abuse of discretion. *Rankin v. State*, 974 S.W.2d 707, 718 (Tex. Crim. App. 1996) (op. on reh'g); *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g). A trial court does not abuse its discretion, and we will not reverse a trial court's ruling, unless the ruling falls outside the zone of reasonable disagreement. *Rankin*, 974 S.W.2d at 718. A trial court abuses its discretion when it acts without reference to any guiding rules and principles or acts arbitrarily or unreasonably. *Montgomery*, 810 S.W.2d at 380.

Texas Code of Criminal Procedure article 38.22, section 3 states the following:

> No oral or sign language statement of an accused made as a result of custodial interrogation shall be admissible against the accused in a criminal proceeding unless:

9

. . . .

> (5) not later than the 20th day before the date of the proceeding, the attorney representing the defendant is provided with a true, complete, and accurate copy of all recordings of the defendant made under this article.

Tex. Code Crim. Proc. Ann. art. 38.22, § 3(a)(5). The object of the provision appears to be bound with the circumstances surrounding its enactment: § 3(a)(5) was designed to offset the disadvantages to the defense caused by permitting recordings to be surreptitious. *Lane v. State*, 933 S.W.2d 504, 516 (Tex. Crim. App. 1996). Affording defense counsel access to the recordings effectuates this purpose as much as requiring actual delivery. *Id.* So long as defense counsel is informed of the existence of the recording and permitted reasonable access to a copy, the purpose of § 3(a)(5) has been met because the word "provide" in section 3(a)(5) means to "make available or furnish." *Id.* In order to preserve error on a failure to provide a copy of a recording, however, it is incumbent upon an appellant at the pretrial hearing to object to the State's failure to comply with the statute. *Id.*

Here, the record reveals that the hearing on the motion to suppress was not heard prior to the commencement of voir dire; thus, voir dire was the first "proceeding" in the case. Alvarez, however, did not object on November 5, 2007, during voir dire. Instead, Alvarez waited until November 8 to complain

10

of the State's failure to comply with article 38.22, section 3(a)(5), which raises a preservation concern. *See id.* at 516–17 (holding that trial court was not placed on notice at pretrial hearing that defense counsel did not possess copies of the recording because defense counsel waited until trial—four months after pretrial hearing—to object).

But assuming that Alvarez timely objected, the record reveals that the State did comply with article 38.22, section 3(a)(5). When Alvarez brought up his motion to suppress on the day after the voir dire concluded, the following exchange took place on the record:

> [DISTRICT ATTORNEY]: The VHS tape -- I'm sorry -- the -- the DVD, the original recording, is referenced in the offense report, and -- and, in fact, even states that it's in the district attorney's office as evidence, and then the DVD was not in the evidence room, so-to-speak, but was in an envelope and has been in an envelope in the district attorney's file as long as the district attorney has had a file, and that has been certainly since May of 2007, and probably before then. This case has been set for trial twice, once October 22nd, and then, of course, this setting. I know Mr. Platt's been in my office I can remember distinctly at least on one occasion. The file, this file, like all other files, has been made available to Mr. Platt. I believe that -- that I have provided a copy.
>
> I have a case here, Lane versus State, 933 SW 2d 504, that basically says that if the legis -- that -- that -- the Code of Criminal Procedure does not require actual delivery of a recorded oral statement, and -- and if I could read from this case, says, "But if the legislature had intended to require actual delivery, they could have used the word, quote, 'served,' 'given,' or 'delivered' instead of 'provide.' Giving the object sought by the statute and the

11

consequences of the differing constructions, we hold that the word 'provide' in section 3(a)5 means to make available or furnish."

Your Honor, I think that one thing that is different with the way that VHS tapes are handled at least in my office and probably in most offices and DVDs is that often VHS tapes, because they're bulky, are kept in a different place, and I think it's sometimes disingenuous to -- for the State to argue, "Well, Your Honor, I provided this," when, Your Honor, I really haven't. But in this case, because the DVD is in a manila envelope and in the court's file, has been available to the defense from the very beginning of this whole process, I believe that the State has complied with the dictates of the Code of Criminal Procedure. . . .

[DEFENSE COUNSEL]: I think that the case law is also clear, Your Honor, that that [sic] mentioning in -- in an open file that a tape exists doesn't comply with the statute. And there's a couple of cases here that -- that say, telling the -- the defendant and the defense attorney that there is a video and that, "Here's a transcript of it" didn't comply with it. The first time I was told that -- that this tape existed was in Rob's office on October 22nd, and on which day I couldn't find it, and that's -- that's the -- the day I thought you had a -- you had a video there, but it was -- it was -- it was on a disk. So October 22nd still isn't twenty days before our proceeding, which our -- since we did not have a pretrial motion day, our proceeding would be when we picked the jury. And the -- the statute's also very clear on my not having to request it. You have to request things under 37.07 and 404(b), but other than that, I don't request it, it has to be provided to me. [RR3:2–5]

As shown by the record, this is not a case involving a surreptitious recording, nor is it a case in which the State attempted to offer the defense a transcript of the recording in lieu of a copy of the tape. Instead, as the District Attorney pointed out, the offense report from the traffic stop referenced the recording and explicitly stated that the recording was "in the district attorney's

12

office as evidence."  These facts — an investigative report referencing a taped recording and the location of the recording coupled with an "open file policy"—have been held to meet the State's burden to provide the defense access to the recording.  *See Monroe v. State*, Nos. 05-07-00164-CR, 05-07-165-CR, 05-07-00166-CR, 05-07-00167-CR, 05-07-00168-CR, 05-07-00169-CR, 2008 WL 2376990, at *3 (Tex. App.—Dallas June 12, 2008, no pet.) (not designated for publication) (holding that trial court's decision was not outside the zone of reasonable disagreement when it denied appellant's objection and admitted the videotape; the record indicated that the State met its burden under section 3(a)(5) because appellant did not controvert State's argument that police reports mentioned video recording of confession); *see also McClenton v. State*, 167 S.W.3d 86, 90 (Tex. App.—Waco 2005, no pet.); *Tinker v. State*, 148 S.W.3d 666, 672 (Tex. App.—Houston [1st Dist.] 2004, no pet.) (both involving open file policies and holding that the State had satisfied the requirements of article 38.22, section 3(a)(5)).  The fact that Alvarez's counsel here looked for a videotape on October 22 instead of a DVD does not alter the fact that the State made the recording available in a manilla envelope, as part of its open file, from the beginning of the case.

13

Applying the appropriate standard of review, we cannot say that the trial court's decision to deny Alvarez's motion to suppress was outside the zone of reasonable disagreement.  We overrule Alvarez's second point.

## V. CONCLUSION

Having overruled both of Alvarez's points, we affirm the trial court's judgment.

SUE WALKER
JUSTICE

PANEL: DAUPHINOT, WALKER, and MCCOY, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: January 15, 2009

14