*Court Of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*

★ ★ ★ ★ ★ ★

# MEMORANDUM OPINION

No. 04-07-00889-CR

Gilbert **AGUIRRE**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 218th Judicial District Court, Karnes County, Texas
Trial Court No. 05-11-00128-CRK
Honorable Donna S. Rayes, Judge Presiding

Opinion by:  Rebecca Simmons, Justice

Sitting:  Karen Angelini, Justice
 Sandee Bryan Marion, Justice
 Rebecca Simmons, Justice

Delivered and Filed:  February 11, 2009

AFFIRMED

Gilbert Aguirre was convicted by a jury of aggravated assault and was sentenced to seven years imprisonment.  Aguirre's sentence was suspended, and he was placed on seven years community supervision.  On appeal, Aguirre contends: (1) the evidence is legally and factually insufficient to support the jury's verdict; (2) a pre-trial identification procedure was impermissibly suggestive; (3) the trial court erred in not probating his fine; and (4) no factual basis supported the

amount of restitution Aguirre was required to pay. On November 5, 2008, we issued an opinion and order setting aside the amount of restitution contained in the trial court's judgment, abating the appeal, and remanding the cause to the trial court for a hearing to determine a just amount of restitution. The reporter's record from the hearing was filed on December 2, 2008, and the appeal was reinstated. After evidence in support of the amount of restitution was admitted at the hearing, defense counsel agreed that restitution should be set in the amount of $883.00. Because the foregoing disposes of Aguirre's issue regarding the restitution amount, we only address Aguirre's other issues.

## BACKGROUND

Jason Baldera and several of his friends crossed the street to visit a school friend at a neighboring house. A fight erupted between Baldera and his friends and the people at the other house. Baldera was stabbed multiple times and was taken to a hospital for treatment.

## SUFFICIENCY OF THE EVIDENCE

In his first two issues, Aguirre challenges the sufficiency of the evidence to establish: (1) his identity as the person who stabbed Baldera; and (2) his use of a deadly weapon. In determining the legal sufficiency of the evidence, we review all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Vodochodsky v. State*, 158 S.W.3d 502, 509 (Tex. Crim. App. 2005). In conducting a factual sufficiency review, this court views all of the evidence in a neutral light and sets aside the verdict only if: (1) the evidence is so weak that the verdict is clearly wrong and manifestly unjust; or (2) the verdict is against the great weight and preponderance of the evidence. *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App.

2000). "[D]ue deference must be accorded the fact finder's determinations, particularly those determinations concerning the weight and credibility of the evidence," and a reviewing court's disagreement "with the fact finder's determination is appropriate only when the record clearly indicates such a step is necessary to arrest the occurrence of a manifest injustice." *Id*. at 9.

Identification of the defendant as the person who committed the offense charged is part of the State's burden of proof beyond a reasonable doubt. *Miller v. State*, 667 S.W.2d 773, 775 (Tex. Crim. App. 1984); *Wiggins v. State*, 255 S.W.3d 766, 771 (Tex. App.—Texarkana 2008, no pet.). In this case, a confidential informant told the investigating officer that Aguirre was the person who stabbed Baldera. Both Baldera and a second eyewitness, Jeremy Villarreal, identified Aguirre as the person who stabbed Baldera from a photo lineup. In addition, Roland Olivarez, who also was stabbed during the fight, testified that Aguirre told another person that he had stabbed Baldera. Although defense counsel questioned the credibility of the eyewitnesses' testimony, given the vague descriptions of the assailant that they initially provided, the fact finder's determination with regard to their credibility is not clearly wrong or manifestly unjust. Accordingly, the evidence is legally and factually sufficient to support the jury's finding that Aguirre stabbed Baldera.

Although a knife is not a deadly weapon per se, a knife can be shown to be a deadly weapon through proof of the manner of its use, its size and shape, and its capacity to cause serious bodily injury. *Morales v. State*, 633 S.W.2d 866, 868 (Tex. Crim. App. 1982). The State does not have to introduce the knife into evidence to prove the knife was a deadly weapon. *Magana v. State*, 230 S.W.3d 411, 414 (Tex. App.—San Antonio 2007, pet. ref'd); *Nickerson v. State*, 69 S.W.3d 661, 669 (Tex. App.—Waco 2002, pet. ref'd). Wounds inflicted upon a victim are a factor to consider in determining whether a weapon qualifies as a deadly weapon. *Id*.

In this case, pictures of the wounds inflicted on Baldera were introduced into evidence. The jury heard testimony that Baldera suffered five stab wounds on his back, one on his chest, and on his ear. Baldera was bleeding profusely from the wounds when he arrived at the emergency room. The treating physician in the emergency room, Dr. Ryan Cradeur, was focused on whether Baldera's lungs had been penetrated which would cause them to collapse. Dr. Cradeur testified that Baldera could have died from the wounds. Given the nature of the stab wounds, Dr. Cradeur believed Baldera might require surgical intervention; therefore, Baldera was air-lifted by helicopter to another hospital with surgeons on staff for better care. In view of the evidence presented, including the doctor's expressed concerns and his testimony that Baldera could have died from the wounds, we conclude that the evidence is legally and factually sufficient to support the jury's finding that Aguirre used a deadly weapon in the assault.

### IDENTIFICATION PROCEDURE

In his third issue, Aguirre contends that an impermissibly suggestive pretrial photographic identification tainted Baldera's in-court identification. We make the following two inquiries in determining the admissibility of an in-court identification: (1) whether the police used an impermissibly suggestive pre-trial identification procedure, and (2) if so, whether, under the totality of the circumstances, there was a very substantial likelihood of irreparable misidentification. *See Delk v. State*, 855 S.W.2d 700, 706 (Tex. Crim. App. 1993). The defendant has the burden to show by clear and convincing evidence that the in-court identification is unreliable. *Id.* The admissibility of an identification is a mixed question of law and fact that we review *de novo*. *See Loserth v. State*, 963 S.W.2d 770, 773 (Tex. Crim. App. 1998).

Although Aguirre's brief focuses on the second step of this two-part inquiry, we must first evaluate the pretrial photo lineup itself to determine whether it was impermissibly or unduly suggestive. *Delk*, 855 S.W.2d at 706; *McClenton v. State*, 167 S.W.3d 86, 96 (Tex. App.—Waco 2005, no pet.). A lineup is considered unduly suggestive if other participants are greatly dissimilar in appearance from the suspect. *McClenton*, 167 S.W.3d at 96. A suspect may be greatly dissimilar in appearance from the other participants because of his distinctly different appearance, race, hair color, height, or age. *Id*. Minor discrepancies between lineup participants, however, do not render a lineup impermissibly suggestive. *Id*.

The lineup in this case was prepared using a computer program that generated random photographs based on similarities to Aguirre's photograph. Although Aguirre is the only person in the lineup wearing a necklace, this is a minor discrepancy and fails to establish by clear and convincing evidence that the lineup was impermissibly suggestive.

Even if we were to consider the second step in the analysis, we would weigh the following factors against the questionable corrupting effect of the lineup in assessing reliability under the totality of the circumstances: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation, and (5) the length of time between the crime and the confrontation. *Loserth*, 963 S.W.2d at 772. In this case, the witnesses testified that the area in which the assault occurred was well-lit by a street lamp and porch lights. Baldera had a good opportunity to witness Aguirre, stating that he turned around and saw him which is confirmed by the stab wounds to his chest and ear. Baldera stated that he got a good look at his assailant. Baldera was shown the lineup approximately nine days after the offense

and only took seconds to identify Aguirre. Although Baldera's prior description of his assailant was vague, even if the trial court had determined that the lineup was impermissibly suggestive, the trial court would not have erred in determining that no substantial likelihood of irreparable misidentification occurred given the totality of the circumstances. Therefore, the trial court did not err in admitting Baldera's in-court identification.

### PROBATED FINE

In his fourth issue, Aguirre contends the trial court erred in not probating the fine assessed as part of his sentence. The State agrees with Aguirre regarding the law, i.e. a judge cannot order that a fine probated by a jury be paid as a condition of probation. *See Martinez v. State*, 874 S.W.2d 267, 267 (Tex. App.—Houston [14th Dist.] 1994, pet. ref'd). However, the State disagrees that the trial judge did not probate the fine. Although the trial judge expressed a lack of clarity with regard to whether the fine should be probated at the sentencing hearing, she concluded by stating that "we'll look into that and whatever the law requires of that, that's what we'll do." The trial court's Order Imposing Conditions of Community Supervision clearly states, "Pay the fine in the amount of $5000.00 PROBATED." The inclusion of the word "fine" in the portion of the order stating the terms for the payments Aguirre was required to make does not change our analysis. As the State explains in its brief, the calculation of the payment terms excluded the amount of the fine. Accordingly, Aguirre's fourth issue is overruled.

### CONCLUSION

The trial court's judgment is affirmed.

Rebecca Simmons, Justice

DO NOT PUBLISH