**Jimmy CLAY, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 06–01–00207–CR.**

Court of Appeals of Texas,
Texarkana.

Submitted Oct. 15, 2002.

Decided March 24, 2003.

Nelda F. Williams, State Counsel for Offenders, Huntsville, for appellant.

Nicole Habersang, Assistant District Attorney, Texarkana, for appellee.

Before MORRISS, C.J., ROSS and CORNELIUS,* JJ.

## OPINION

Opinion by Justice CORNELIUS (Retired).

Jimmy W. Clay was convicted of aggravated assault on a public servant. A jury found him guilty and set his punishment, enhanced by three prior felony convictions, at ninety-nine years' imprisonment.

On appeal, Clay raises two issues: the trial court's alleged error in allowing the State to cross-examine Clay at the guilt/innocence phase of the trial about his violence against prison guards during his confinement in prison, and the trial court's failure to instruct the jury, or allow defense counsel to inform the jury, that any sentence received in this case would run consecutively with his current sentence. We overrule these contentions and affirm the judgment.

Clay was an inmate at the Department of Criminal Justice's Telford Unit in Bowie County, Texas. Viewed most favorably to the State, the evidence shows that, on October 27, 1999, Officer Robert Ryan was engaged in getting the inmates in the A-pod of building 8 out of their cells to go for their recreation time. When Ryan came to Clay's cell, Clay was inside the cell standing at the door in his boxer shorts, holding in his arms his clothing that was to be inspected before he left to go to recreation. Ryan motioned to the "picket officer," Officer Kenneth Nelson, to "roll the door," meaning to activate the switch that allows the cell door to slide open. When the door opened, Clay pulled his right arm from under his clothes, lunged toward Ryan, and stabbed him with a nine-or-ten—inch-long metal "shank." Clay had the shank concealed under the clothes in his arms, and the shank was attached to his right hand by cloth or tape bindings. When Clay stabbed Ryan, Ryan jumped backward and bent over. Clay backed into his cell and began "ranting and raving," threatening to kill Ryan and the other officers who were present. Clay testified that, after the assault, he bent the shank and threw it out of his cell. The weapon was introduced into evidence at the trial. Medical doctors testified that Ryan's injury was a serious one that could have been fatal if the weapon had pierced some vital organ. Ryan refused medically recommended hospitalization at first, but several days later had to be hospitalized after he developed an infection as a result of the piercing wound. The sufficiency of the evidence to support the conviction is not challenged.

At the guilt/innocence phase of the trial, Clay testified in his own behalf and denied that he intentionally stabbed Ryan. At one point in his direct testimony, Clay's counsel asked him:

Q. They're suggesting that you're a violent inmate. Do you have a history of any sort of charges of violence while you were at Telford?

A. No, sir. I never had a case on the Telford Unit.

Q. O.K. What about since the date of this indictment, the date of the alleged crime, 10/27 of '99?

A. Since 10/27/99 I have one case, I believe it was last month.

Q. O.K. And what was that for?

A. Code twenty.

Q. Code twenty is?

A. Sexual misconduct.

* William J. Cornelius, Chief Justice, Retired, Sitting by Assignment

On cross-examination, the prosecutor asked Clay:

Q. Okay. Your attorney went into the fact that you're not a violent inmate?

A. No, ma'am.

Q. You wouldn't consider yourself a violent inmate?

A. No, ma'am.

Q. And you were here when Officer Davis testified about bad blood between you and officer Ryan or bad blood between you and any other officers?

A. He didn't say ... I don't recall him saying I had bad blood with any officer.

Q. Well, he said he hadn't heard of you having any—do you have any animosity towards the guards?

A. No, ma'am.

Q. You have complete respect for all the guards out there?

A. Yes, ma'am.

Q. Then could you explain to this jury why during the period of your incarceration you have been written up at least twenty times....

[Defense Counsel]: Objection.

. . . .

[Defense Counsel]: I believe his testimony was anything he did at Telford or afterwards.

If she limits her questions to that, I have no objection.

. . . .

The Court: I'm going to sustain his objection on the sexual misconduct and limit it to his violence.

The State then proceeded to prove by Clay that he had previously been "written up" twice for assaulting guards, three times for threatening and cursing guards, once for possessing a seven-inch metal rod sharpened at the end, and for possessing a shank.

The trial court admitted the State's evidence on the grounds that Clay had "opened the door" to evidence of his past violent nature, especially with respect to prison guards, and that the evidence was relevant to prove Clay's intent to stab Ryan. (Clay had previously testified that, if he stabbed Ryan, it was unintentional.) *See* Tex.R. Evid. 404(b).

Clay contends that, because he limited his history of violence to only the time he was incarcerated at the Telford Unit and thereafter, evidence of his violent nature and acts at other times when he was incarcerated elsewhere was not admissible. We disagree.

█ We do not believe that a defendant may produce evidence of his lack of violence during a limited time period and then prohibit the State from showing his violent acts during other time periods. If the defendant contends he has reformed and changed his violent character from previous times, he may produce evidence of that and explain it to the jury. But to allow him to show his history for violence or nonviolence for only an isolated time and leave the rest of his history unrevealed would give the jury a false impression of his propensity for violence.

█ Where the defendant delves into part of a subject, the State is entitled to inquire into the whole of the matter in order to explain it or correct a false impression, even if the later evidence might otherwise be inadmissible. *Wheeler v. State*, 67 S.W.3d 879, 885 (Tex.Crim.App. 2002); *McIlveen v. State*, 559 S.W.2d 815, 822 (Tex.Crim.App.1977); *Parr v. State*, 557 S.W.2d 99, 102 (Tex.Crim.App.1977); *Bermudez v. State*, 504 S.W.2d 868 (Tex. Crim.App.1974); *Streff v. State*, 890 S.W.2d 815, 819–20 (Tex.App.-Eastland 1994, pet. ref'd); *Gilbert v. State*, 874 S.W.2d 290 (Tex.App.-Houston [1st Dist.] 1994, pet. ref'd). If a defendant selectively

details his "trouble with the law," his failure to relate other instances leaves the jury with a false impression, and cross-examination is not limited to the incidents to which he testified on direct examination. *Ex parte Carter*, 621 S.W.2d 786 (Tex. Crim.App.1981); *Reese v. State*, 531 S.W.2d 638 (Tex.Crim.App.1976); *Turner v. State*, 4 S.W.3d 74 (Tex.App.-Waco 1999, no pet.).

We conclude that the trial court did not abuse its discretion in allowing the State to inquire into violent acts and threats by Clay when he was incarcerated at institutions other than the Telford Unit.

■ Additionally, the challenged evidence was admissible, as the trial court ruled, to show Clay's intent in assaulting Ryan. Clay testified in his own behalf that he did not intend to stab Ryan, but that it was an accident. Clay said he had the shank because he wanted the guards to see it and thus get him an interview with some prison officers so he could discuss his safety, and when Ryan tried to take the weapon from him, they scuffled and he must have accidently cut Ryan. Evidence of other crimes or bad acts is admissible in order to prove motive, intent, or absence of accident or mistake. Tex.R. Evid. 404(b). The trial court correctly admitted the evidence on this basis.

In his second issue, Clay contends the trial court erred in refusing to allow defense counsel to inform the jury that any sentence Clay received in this case would be served consecutively with any sentence he was serving at the time of this trial. Clay also contends that the trial court erred in failing to instruct the jury on the cumulating provision when the jury requested that information during its deliberations.

■■ We find no error in this regard. First, Clay failed to object to the charge at the punishment stage of the trial and never requested that the trial court give the jury an instruction on consecutive service of any sentence. Nor did Clay object when the trial court refused to give the jury any further instruction on the cumulation provisions of the law when it requested such information. The omission of an unobjected-to or unrequested defensive instruction does not constitute error. *Posey v. State*, 966 S.W.2d 57, 62 (Tex.Crim.App. 1998).

Moreover, it would have been improper for the trial court to instruct the jury on the consecutive sentencing law or to inform it of the effect such law might have on how long Clay might serve. *Levy v. State*, 860 S.W.2d 211 (Tex.App.-Texarkana 1993, pet. ref'd).

For the reasons stated, we affirm the judgment of the trial court.