COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                        NO.
2-06-255-CR

 

 

TOMMY STEWART                                                              APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

             FROM
THE 30TH DISTRICT COURT OF WICHITA COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------

I.  Introduction

In six issues, Appellant
Tommy Stewart appeals his conviction for the felony offense of assault on a
correctional officer.  We affirm.

II.  Factual Background and Procedural History








This is the case of the owner
of the State Bar.  Officer Billy Cook and
Sergeant Bernardo DeLuna both testified that on March 22, 2002, they were
working as corrections officers at the TDCJ Allred Unit while Stewart was an
inmate there.  As Officer Cook approached
Stewart in the unit, Stewart used abusive language toward him.  Sergeant DeLuna overheard this, but could not
hear the specific words.  He could tell,
however, that the language was cursing and abusive.  Officer Cook testified that Stewart called him
a Astupid mother-f------ n-----.@  Officer Cook asked Stewart for
his identification, which Stewart supplied. 
According to Officer Cook, as he looked at the card, Stewart struck the
him in the face.  Officer Cook testified
that Stewart then grabbed him around the waist, picked him up and shoved him
against a wall, cracking a rib. Officer Cook testified that he unsnapped his
holster holding his COP (carry on person) spray, but was unable to pull it out
because Stewart had his arms around the officer=s waist.  Sergeant DeLuna
witnessed the struggle.  Officer Cook
finally got Stewart onto the ground, and after Sergeant Hale arrived, Stewart
was handcuffed.  Once the officer=s hands were free, Stewart was already on the floor and there was no
need for the spray.  Officer Cook
testified that both he and Stewart went to the infirmary.

Sergeant DeLuna testified that
he was uncertain whether Officer Cook ever discharged the spray, although at
one point, he assumed the spray was used, but he did not know that for a
fact.  It was the State=s position that Officer Cook was lawfully discharging his duty when
Stewart struck him in the eye.








Stewart testified that on the
day of the incident Officer Cook was Aup in the tower opening the doors@ and kept closing the door in his (Stewart=s) face.  He told the jury it
was actually Officer Jackson who was working the floor with Stewart, not
Officer Cook.  Officer Cook came down out
of the tower, with his COP spray in hand and asked Stewart for his
identification card.  When Stewart gave
Officer Cook his card, the officer began spraying him, according to
Stewart.  Stewart testified that he grabbed
the officer=s hand to
keep from being sprayed and the two of them wrestled.  Officer Cook never called for help, and two
other officers stood by and watched. 
Officer Cook got some spray on his own hand and then wiped his eyes,
causing redness to his face.  Stewart
agreed that both he and Officer Cook went to the infirmary.

Stewart said he had never had
any trouble with Officer Jackson or Officer Cook before that day.  Stewart did explain, however, that there was
a conspiracy against him because he was a graduate of the Texas A&M college
of law, a state judge on leave from the county, and in prison as part of an
undercover assignment.  Stewart also
claimed to own the State Bar.[1]  Stewart=s general defense was that Officer Cook acted unlawfully in
discharging his duty.








At trial, the jury found
Stewart guilty, and the judge sentenced him to twenty years= confinement, to run consecutively with Stewart=s prior sentence in cause no. 13,488, assessed on March 4, 1982.

III.  Disregarding A Line of Questioning

In his first issue, Stewart
complains that the trial court improperly failed to instruct the jury to
disregard a line of questioning proffered by the State.  This testimony was as follows:

[STATE]:
And then when you go into these units, have you ever been spit upon?

 

[OFFICER
COOKE]: Yes, sir.

 

[STATE]:
Have you ever had urine thrown on you?

 

. . . . 

 

[DEFENSE]:
Objection.  That=s
irrelevant.

 

THE
COURT: Sustained.

 

[DEFENSE]:
I would request the jury be instructed to disregard this line.

 

THE
COURT: That=s
overruled.  Go ahead.

 

[STATE]:
Is it generally considered a pleasant place to work?

 

[COOK]:
No, sir.

 








Analogizing the standard of
review to that for reviewing the denial of a motion for mistrial and the
admission or exclusion of evidence, Wead v. State, 129 S.W.3d 126, 129
(Tex. Crim. App. 2004) (denial of a mistrial standard) and Rodriguez v.
State, 203 S.W.3d 837, 841 (Tex. Crim. App. 2006) (admission of evidence
standard), we review the evidence under the abuse of discretion standard.  However, even assuming the trial court abused
its discretion, we hold that the trial court=s failure to instruct the jury to disregard was harmless.  

Assuming error, we must
conduct a harm analysis to determine whether the error calls for reversal of
the judgment.  Tex. R. App. P. 44.2. 
If the error is constitutional, we apply rule 44.2(a) and reverse unless
we determine beyond a reasonable doubt that the error did not contribute to
appellant=s conviction
or punishment.  Tex. R. App. P. 44.2(a). 
Otherwise, we apply rule 44.2(b) and disregard the error if it did not
affect appellant=s
substantial rights.  Tex. R. App. P. 44.2(b); see Mosley
v. State, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh=g), cert. denied, 526 U.S. 1070 (1999); Coggeshall v. State,
961 S.W.2d 639, 642B43 (Tex.
App.CFort Worth 1998, pet. ref=d).








Trial court error regarding
the admission of evidence is generally nonconstitutional error.  See Soloman v. State, 49 S.W.3d
356, 364 (Tex. Crim. App. 2001).  Because
the trial court denied Stewart=s request for an instruction to disregard an improper line of
questioning, we conclude that the trial court=s error, in any, was nonconstitutional.  Therefore, rule 44.2(b) is applicable.  Tex.
R. App. P. 44.2(b).  A substantial
right is affected when the error had a substantial and injurious effect or
influence in determining the jury=s verdict.  King v. State,
953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing Kotteakos v. United
States, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)); Coggeshall,
961 S.W.2d at 643.  In making this
determination, we review the record as a whole.  See Johnson v. State, 967 S.W.2d 410, 417
(Tex. Crim. App. 1998).   

The first question the
prosecutor asked Officer Cook about Stewart was eighteen questions after the
previously recounted exchange.  That
exchange did not mention Stewart or implicate Stewart as the urine
thrower.  Further, the gap between the
exchange and the first question about Stewart does not tie Stewart to the
irrelevant exchange. 

We conclude that, in the
context of the entire case against Stewart, the trial court=s assumed error in failing to instruct the jury to disregard did not
have a substantial or injurious effect on the jury=s verdict and did not affect Stewart=s substantial rights.  See
King, 953 S.W.2d at 271.  Thus, we
disregard the error.  See Tex. R. App. P. 44.2(b).  We overrule Stewart=s first issue.

 

 








IV.  State=s Exhibit Number Three

In his second issue, Stewart
asserts error on the part of the trial court in admitting State=s Exhibit 3, a ACriminal
Case Voluntary Statement@ by Sergeant
DeLuna, an eye witness to the Stewart-Cooke confrontation. 

The standard of review for a
trial court=s
evidentiary ruling is abuse of discretion. 
Sauceda v. State, 129 S.W.3d 116, 120 (Tex. Crim. App. 2004)
(citing Angleton v. State, 971 S.W.2d 65, 67 (Tex. Crim. App.
1998)).  If the ruling was correct under
any theory of law applicable to the case, in light of what was before the trial
court at the time the ruling was made, then the ruling must be upheld.  Sauceda, 129 S.W.3d at 120 (citing State
v. Ross, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000)); Weatherred v. State,
15 S.W.3d 540, 542 (Tex. Crim. App. 2000); Romero v. State, 800 S.W.2d
539, 543B44 (Tex. Crim. App. 1990).  Even
if it was error to admit the evidence, the error is cured if the same facts are
proved by other unobjected-to evidence.  Ethington
v. State, 819 S.W.2d 854, 858 (Tex. Crim. App. 1991); Purtell v. State,
761 S.W.2d 360, 376 (Tex. Crim. App. 1988), cert. denied, 490 U.S. 1059
(1989).








During the direct examination
of Sergeant DeLuna by the State, testimony was elicited that Officer Cooke
pulled out his COP during the scuffle with Stewart, but Sergeant DeLuna did not
see him spray Stewart and could not tell weather Stewart was sprayed or
not.  Later, during cross-examination,
defense counsel showed a portion of State=s Exhibit 3, which had been highlighted, to Sergeant DeLuna wherein he
had stated that Officer Cooke had sprayed Stewart in the face.  Defense counsel also elicited testimony from
Sergeant DeLuna that the statement was made about two hours after the confrontation
when the events were fresh in his mind.  








Thereafter, the State offered
the exhibit itself into evidence under the Rule of Optional Completeness, Texas
Rules of Evidence.  Tex. R. Evid. 107.  The State=s reason for seeking such introduction was to show that also in that
report Sergeant DeLuna stated he was unsure whether Officer Cook had sprayed
the COP spray.  Defense counsel objected
that he had never offered the written document itself into evidence and further
that it was inadmissible Aunder
608--603 as extraneous documentary evidence, under [s]ubpart C, Texas Rules of
Evidence, 613, [s]ubpart C.@  The objection was overruled
and the document admitted.  Rule 603 is
entitled AOath or
Affirmation@ and was
apparently a misstatement by counsel.  Tex. R. Evid. 603.  Rule 608 contains the phrase Aextrinsic evidence@ as opposed to Aextraneous
evidence@ and refers to the fact that specific instances of the conduct of a
witness, offered for the purpose of attacking or supporting a witness=s credibility, may be not proven by extrinsic evidence.  Tex.
R. Evid. 608(b).  The exact nature
of and reliance on this rule is not made clear in the record from the trial court.  Rule 613(c) provides that the prior statement
of a witness which is consistent with the testimony of the witness is generally
inadmissible unless the prior statement is consistent with his testimony and is
offered to rebut an express or implied charge of recent fabrication.  Tex.
R. Evid. 613(c).  This rule would
be a reason to support the State=s offering of the document, not an objection thereto.  Therefore, we will construe the initial part
of counsel=s objection
as an objection to the State=s offer of the document under the Rule of Optional Completeness.

The Rule of Optional
Completeness reads as follows:

When
part of an act, declaration, conversation, writing or recorded statement is
given in evidence by one party, the whole on the same subject may be inquired
into by the other, and any other act, declaration, writing or recorded
statement which is necessary to make it fully understood or to explain the same
may also be given in evidence, as when a letter is read, all letters on the
same subject between the same parties may be given.  AWriting or recorded statement@
includes depositions.

 

Tex. R. Evid. 107.  








Under the Rule of Optional
Completeness, when only a portion of an act, declaration, conversation,
writing, or recorded statement is introduced, the adverse party is entitled to
introduce into evidence the remaining parts or any related act, declaration,
writing, or recorded statement necessary to a full understanding of the
evidence, or to explain that evidence.  Id.  Rule 107 is one of admissibility and
permits the introduction of otherwise inadmissible evidence when that evidence
is necessary to fully and fairly explain a matter Aopened up@ by the
adverse party.  See Johnson v. State,
747 S.W.2d 451, 453B54 (Tex.
App.CHouston [14th Dist.] 1988, pet. ref=d). AThe so‑called
rule of optional completeness takes effect when other evidence has already been
introduced but is incomplete and misleading.@  Jones v. State, 963
S.W.2d 177, 182 (Tex. App.CFort Worth 1998, pet. ref=d).  AOnce an evidentiary door has been opened by one side, this rule serves
to allow the other side to complete the picture.@  West v. State, 121
S.W.3d 95, 103 (Tex. App.CFort Worth
2003, pet. ref=d).

In common practice, this rule
is used when a portion of a document is read into evidence and opposing counsel
wants other portions of the document read into evidence.  When a document, or part thereof is itself
offered, Rule 106 is applicable.  That
rule reads:

When
a writing or recorded statement or part thereof is introduced by a party, an
adverse party may at that time introduce any other part or any other writing or
recorded statement which ought in fairness to be considered contemporaneously
with it.  AWriting
or recorded statement@
includes depositions.

 

Tex. R. Evid. 106.  








In the factual scenario
presented here, however, a portion of a document was initially only read, and
then the document itself was subsequently offered by opposing counsel.  A close examination of Rule 107 indicates
that when a part of a writing is Agiven in evidence@ the whole writing on the same subject may be Ainquired into by the other@ party.  Tex. R. Evid. 107.  The
rule does not define the term Ainquired into.@  The rule does state that any other writing
necessary to fully understand or explain the initial offering Amay also be given in evidence, as when a letter is read, all letters
on the same subject . . . may be given.@  Id.  This language indicates that if a portion of
a document is read into evidence, then other portions or other writings may only
be read into evidence.  In other words,
if one party simply reads from a document, the party does not open the door for
the opposing party to admit the document into evidence.  








Therefore, we hold under the
plain language of Rule 107 that it was error to admit State=s Exhibit 3 into evidence when a portion thereof had only been read
into evidence.  See id.  However, an examination of State=s Exhibit 3 shows that the pertinent portion of the exhibit, that is,
where Sergeant DeLuna stated that Officer Cooke sprayed Stewart in the face,
but also indicated that he could not tell whether the spray was discharged, was
evidence that had already been admitted without objection through the testimony
of Sergeant DeLuna.  Hence, the trial
court=s error in admitting the document was harmless.  See Reyes v. State, 84 S.W.3d 633, 638
(Tex. Crim. App. 2002) (finding any error in admission of evidence harmless if
cumulative of evidence admitted elsewhere without objection).  We overrule Stewart=s second issue.

V.  Closing Argument

In his third issue, Stewart
asserts error on the part of the trial court in overruling his objection to a
portion of the State=s closing
argument.

To be permissible, the State=s jury argument
must fall within one of the following four general areas: (1) summation of the
evidence; (2) reasonable deduction from the evidence; (3) answer to argument of
opposing counsel; or (4) plea for law enforcement.  Felder v. State, 848 S.W.2d 85, 94B95 (Tex. Crim.
App. 1992), cert. denied, 510 U.S. 829 (1993); Alejandro v. State,
493 S.W.2d 230, 231 (Tex. Crim. App. 1973).

During closing argument, the
prosecutor in the case told the jury 

You=re
instructed that a public servantCit=s the
second paragraph [paragraph 11 of the jury charge]Cacting
under the power of his office or employment commits an offense if he
intentionally subjects another to mistreatment. 
Okay.  Now, that sounds awfully
broad.  That sounds like if you even look
at him cross-eyed you committed a crime. 
Obviously that=s not
what it seems to say because other parts of this Charge tell you under what
condition it actually becomes a crime. 
First of all, he has to know that his conduct is unlawful.  In prison situations sometimes you have to
mistreat offenders because they just won=t do what they=re
told.  They won=t
cooperate.

 

Defense counsel objected AThat=s a
misstatement of the law.  There is no
constitution or legal right to mistreat.@  This objection was overruled. 








The prosecutor continued with
examples of prison life and stated, AThat=s life in a
prison system.  Sometimes mistreatment
has to happen . . . you=ll think it=s mistreatment . . . .  So just
because someone thinks they=ve been mistreated is not necessary so.  It has to be unlawful mistreatment.@  No further objection was
made.  

Assuming that the trial court
did err by overruling Stewart=s objection, we must assess whether that assumed error was
harmful.  Prosecutorial misstatements of
law are not constitutional in nature.  Coggeshall,
961 S.W.2d at 643.  In conducting a harm
analysis under rule 44.2(b), we disregard nonconstitutional errors unless
appellant=s
substantial rights are affected.  As
previously noted, a substantial right is affected when error has a substantial
and injurious effect or influence on the jury=s verdict.  King, 953
S.W.2d at 271.  In making this
determination, we review the record as a whole.  See Johnson, 967 S.W.2d at 417.

Section 9.53 of the Texas
Penal Code provides that 

An
officer or employee of a correctional facility is justified in using force
against a person in custody when and to the degree the officer or employee
reasonably believed the force is necessary to maintain the security of the
correctional facility, the safety or security of other persons in custody or
employed by the correctional facility, or his own safety or security.

 

Tex. Penal Code Ann. ' 9.53
(Vernon 2003).  








A reading of the entire
closing argument shows that the Amistreatment@ language
was in the context of a discussion that under certain circumstances force is
necessary in a prison setting to maintain order and safety.  When analyzed in its context, the State=s argument was basically that the use of reasonable force did not
constitute unlawful mistreatment.  Furthermore,
after reviewing all the evidence, we hold the trial court=s assumed error of overruling Stewart=s objection did not have a substantial or injurious effect on the jury=s verdict and did not affect Stewart=s substantial rights.  See
King, 953 S.W.2d at 271.  Thus, we
disregard the error.  See Tex. R. App. P. 44.2(b).  We overrule Stewart=s third issue.

VI.  Arguing Outside the Record

In his fourth issue, Stewart
asserts error on the part of the trial court in overruling his objection that
the State=s argument
was outside the record. 








If a jury argument exceeds the bounds of proper argument,
the trial court=s erroneous overruling of a defendant=s objection is not
reversible error unless it affected the appellant=s substantial
rights.  Id.; Martinez v. State,
17 S.W.3d 677, 692B93 (Tex. Crim. App. 2000); Mosley v.
State, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh=g), cert.
denied, 526 U.S. 1070 (1999).  In
determining whether the appellant=s substantial
rights were affected, we consider: (1) the severity of the misconduct (i.e.,
the prejudicial effect of the prosecutor=s remarks), (2)
curative measures, and (3) the certainty of conviction absent the
misconduct.  Martinez, 17 S.W.3d
at 692B93; Mosley,
983 S.W.2d at 259. 

During closing argument, the
prosecutor told the jury that the members of legislature 

aren=t
complete idiots.  They know that prisons
are dangerous places and sometimes you just have to force people to do things
they don=t
want to do.  But I would submit to you
that he wasn=t
abused in any way.  He was taken directly
to medical after they got him handcuffed to make sure he was all right.

 

An objection was made and
overruled.  Stewart does not favor this
court with an explanation of what portion of the aforementioned argument was
outside the record.  He does cite us to
case law indicating that it is error for the State to Ainject new facts harmful to the accused into the trial proceedings,
citing Mathews v. State, 635 S.W.2d 532, 539 (Tex. Crim. App. 1982), and
points out that it can be reversible error if a jury argument injects new and
harmful facts into case or is extreme or manifestly improper.@  Plummer v. State, No.
14-89-00685-CR, 1991 WL 37003, at *6 (Tex. App.CHouston  [14th Dist.] March 21,
1991, no pet.) (not designated for publication) (citing Landry v. State,
706 S.W.2d 105, 110 (Tex. Crim. App. 1985), cert. denied, 479 U.S. 871
(1986)). 








We can in no way envision how
the complained of argument injected new facts into the case or even how it was
improper.  See Plummer, 1991 WL
37003, at *6.  Considering the
appropriate factors, we hold that the severity of the prosecutor=s misconduct, if any, was minimal. 
See Martinez, 17 S.W.3d at 692B93.  Moreover, even absent the alleged misconduct,
there was a significant degree of certainty of conviction given the wealth of
evidence presented against Stewart at trial. 
See id.  Therefore, we hold
that even if the trial court erred by overruling Stewart=s objection, it did not affect Stewart=s substantial rights.  See
Tex. R. App. P. 44.2(b).  Stewart=s fourth issue is overruled.

VII.  Requested Defense Instruction

In his fifth issue, Stewart
complains that the trial court erred by not granting a requested defense
instruction regarding the lesser-included charge of misdemeanor assault.  

Stewart offered the following
requested instruction which was denied by 
the court:

If you find beyond a reasonable doubt that, on or
about March 22, 2002, in Wichita County, Texas, the defendant intentionally,
knowingly or recklessly caused bodily injury to Billy Cook, but you do not find
or have a reasonable doubt that Billy Cook was lawfully discharging an official
duty as a public servant, then you will find the defendant guilty of the lesser
offense of Assault.








If you should find from the evidence beyond a
reasonable doubt that the defendant is guilty of either Assault on a Public
Servant or Assault, but you have a reasonable doubt as to which offense he is
guilty, then you should resolve that doubt in the defendant=s
favor and find him guilty of the lesser offense of Assault. 

 

If you have
a reasonable doubt as to whether the defendant is guilty of any offense, then
you should acquit the defendant and say by your verdict, ANot Guilty.@

The court instructed the jury
that if they found beyond a reasonable doubt that Stewart committed the crime
charged in the indictment that they would find him guilty as charged in the
indictment, 

but
if you do not so believe, or if you have a reasonable doubt thereof, you will
acquit the defendant of Assault Against a Public Servant and next consider
whether the defendant is guilty or not of Assault.

 

Now if you find from the
evidence beyond a reasonable doubt that on or about [the] 22nd day of March
2002, in Wichita County, Texas, the defendant, Tommy Stewart, then and there
intentionally, knowingly, or recklessly caused bodily injury to Billy Cook by
hitting Billy Cook in the left eye then you will find the defendant, Tommy
Stewart, guilty of Assault and so say by your verdict. 

 

Unless you so find beyond a
reasonable doubt, or if you have a reasonable doubt thereof, you will find the
defendant ANot guilty.@ 








Thus, it is clear that the
court did include a charge regarding the lesser-included charge of misdemeanor
assault.  Stewart cites Granger v.
State for the principle that Aan accused has the right to an instruction on any defensive
issue raised by the evidence, whether that evidence is weak or strong,
unimpeached or contradicted, and regardless of what the trial court may or may
not think about the credibility of the evidence.@  3 S.W.3d 36, 38 (Tex. Crim.
App, 1999) (emphasis added).  We
recognize that this is a correct statement of the law.  However, this authority only entitled Stewart
to an instruction, not an instruction of his choosing.  See id. (emphasis added).

Stewart relies on Hall v.
State for the proposition that when a public servant acts unlawfully in the
discharge of his duty he loses the special protection of the law.  See Hall v. State, 158
S.W.3d 470, 471 (Tex. Crim. App. 2005). 
We agree that this is a correct reading of Hall.  See id.  However, Hall is distinguishable from
the case at bar.  In Hall the
trial court denied any jury instruction on the lesser-included offense
of misdemeanor assault.  See id.
at 472.  Stewart received such a charge,
and thus we must conclude that his contention on appeal is that he did not like
the way the court laid out and worded its charge.  Stewart has pointed us to no authority, nor
have we found any, that characterizes a defendant=s dissatisfaction with the wording of the jury charge as error, much
less reversible error. 

Because Stewart received an
instruction of the lesser-included offense of misdemeanor assault, we find no
error and overrule his fifth issue.          


 








VIII.  Consecutive Sentencing

In his sixth issue, Stewart
asserts that the trial court erred in not including a requested instruction in
the punishment phase of the trial in the charge to the jury.

Stewart requested that the
following instruction be given to the jury:

You
are further instructed that, under the law applicable in this case, if a
defendant is sentenced for an offense committed while the defendant was an
inmate in the Institutional Division of the Texas Department of Criminal
Justice and the defendant has not completed the sentence he was serving at the
time of the offense, the judge shall order the sentence for the subsequent
offense to commence immediately on completion of the sentence for the original
offense.

 

The request was denied.  Stewart attempts to analogize the requested
instruction to a statement in Simmons v. South Carolina, 512 U.S. 154,
156, 114 S. Ct. 2187, 2190 (1994) (plurality opinion), which held that when Astate law prohibits the defendant=s release on parole, due process requires that the sentencing jury be
informed that the defendant is parole ineligible.@  Id. at 154, 114 S. Ct.
at 2190.  Stewart acknowledges that
unlike Simmons, his is not a death penalty case but argues that the jury could
be led either directly or inadvertently to believe that an inmate litigant
needs a longer sentence because a portion of it or all of it will be eaten up
by his present sentence.








Case law does not support
Stewart=s position.  In Levy v. State,
860 S.W.2d 211, 213 (Tex. App.CTexarkana 1993, pet. ref=d), the court, in rejecting such an instruction, noted that A[i]n the absence of specific constitutional or statutory authority to
do so, the court should not instruct the jury as to the effect of the parole
laws or how long [an appellant] will be required to actually serve under a
given sentence.@  Id.  Stated differently, it would be improper for a
trial court to instruct a jury on the consecutive sentencing law or to inform
it of the effect such law might have on how long a defendant might serve.  See Clay v. State, 102 S.W.3d 794, 798
(Tex. App.CTexarkana
2003, no pet.).  Further, Texas Code of
Criminal Procedure article 37.07, section 4(c) requires that the jury be
charged as follows, as it was in this case:

It
cannot accurately be predicted how the parole law and good conduct time might
be applied to this defendant if he is sentenced to a term of imprisonment,
because the application of these laws will depend on decisions made by prison
and parole authorities.

 

You
may consider the existence of the parole law and good conduct time.  However, you are not to consider the extent
to which good conduct time may be awarded to or forfeited by this particular
defendant.  You are not to consider the
manner in which the parole law may be applied to this particular defendant.

 

Tex. Code Crim. Proc.
Ann. art. 37.07, ' 4(c) (Vernon 2006).  








Simply put, we agree with our
sister court=s prior
holdings that the instruction requested by Stewart is outside of constitutional
and statutory authority and thus, improper. 
Furthermore, the concern expressed by Stewart as to the thought process
of the jurors is not supported by anything in the record nor was it suggested
by the prosecutor in closing argument. 
Moreover, article 37.07, section 4(d) reads, AThis section does not permit the introduction of evidence on the
operation of parole and good conduct time laws.@  Id. art. 37.07, ' 4(d).  For all the foregoing
reasons, Stewart=s sixth
issue is overruled. 

IX. Conclusion 

Having overruled Stewart=s six issues, we affirm the trial court=s judgment.    

 

BOB MCCOY

JUSTICE

 

PANEL F:    HOLMAN, GARDNER, and MCCOY, JJ.

 

PUBLISH

 

DELIVERED:
March 29, 2007











[1]A.  I own the damn state bar.

 Q.  You
own the state bar?

 A.  Yes,
I do.