

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-18-00370-CR
_____

ROGENE RAY DEAVER, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_____

On Appeal from the 213th District Court
Tarrant County, Texas
Trial Court No. 1492745D; Honorable Louis E. Sturns, Presiding

_____

February 4, 2020

## MEMORANDUM OPINION

Before PIRTLE, PARKER, and DOSS, JJ.

Appellant, Rogene Ray Deaver, appeals from his conviction by jury of the offense of driving while intoxicated.[1] Appellant challenges his conviction through three issues. We will affirm the judgment of the trial court as modified herein.[2]

---

[1] TEX. PENAL CODE ANN. § 49.09 (West Supp. 2019). An offense under this section is a third degree felony punishable by imprisonment for any term of not more than ten years or less than two years and a fine not to exceed $10,000. TEX. PENAL CODE ANN. § 12.34 (West 2019). The trial court assessed punishment against Appellant at imprisonment for a term of ten years, suspended in favor of community supervision for a period of ten years, the imposition of a $1,000 fine, and forty-five days in county jail as a condition of community supervision.

[2] Originally appealed to the Second Court of Appeals, this appeal was transferred to this court by the Texas Supreme Court pursuant to its docket equalization efforts. TEX. GOV'T CODE ANN. § 73.001 (West 2013). Should a conflict exist between precedent of the Second Court of Appeals and this court on any relevant issue, this appeal will be decided in accordance with the precedent of the transferor court. TEX. R. APP. P. 41.3.

**BACKGROUND**

Appellant does not challenge the sufficiency of the evidence supporting his conviction. We will therefore discuss only those facts pertinent to disposition of his appellate issues. TEX. R. APP. P. 47.1.

Appellant was charged via indictment with operating a motor vehicle in a public place while intoxicated. The indictment also contained a "felony repetition enhancement" that set forth Appellant's previous convictions for driving while intoxicated. After Appellant pleaded not guilty, the cause was tried before a jury.

Evidence showed that after Appellant was stopped and arrested for suspicion of driving while intoxicated, the responding police officer obtained a blood warrant and took a sample of Appellant's blood. The sample was submitted to a lab and tested. That sample was later re-submitted and re-tested without explanation. The record indicates the parties agreed not to discuss the original analysis at trial because the analyst who performed that test was unavailable to testify.

During Appellant's cross-examination of a State's witness, a forensic scientist, he elicited testimony that the blood sample had been submitted to a lab in February 2017 and again in February 2018. That same witness agreed blood samples can, "over time" and under some circumstances, generate ethanol. The State argued to the trial court that this testimony opened the door to questioning about the first test. The State told the court it sought to elicit testimony from its witness that there was prior testing, that those results varied from her testing, and that the variance did not indicate the sample was contaminated. The trial court permitted this testimony over Appellant's objection that such admission violated his constitutional right to confront the witnesses against him.

2

After the jury heard the evidence, it convicted Appellant as charged in the indictment and the trial court assessed punishment as noted. This appeal followed.

### ISSUE ONE—CONFRONTATION CLAUSE OBJECTION

In his first issue, Appellant contends the trial court erred when it allowed evidence of the 2017 forensic blood-alcohol analysis to be admitted over his confrontation objection. The State responds that Appellant's cross-examination of the forensic scientist created a false impression the State was entitled to correct, that Appellant failed to identify any testimonial statements taken from the complained-of report, and that the Confrontation Clause was not implicated by the scientist's testimony.

We generally review a trial court's decision to admit evidence under an abuse-of-discretion standard. *Wall v. State*, 184 S.W.3d 730, 743 (Tex. Crim. App. 2006). However, when the admission of evidence involves a constitutional question of law such as whether a statement is testimonial or nontestimonial under the Sixth Amendment, the appellate court must give deference to the trial court's determination of historical facts, but review *de novo* the trial court's application of the law to those facts. *Langham v. State*, 305 S.W.3d 568, 576 (Tex. Crim. App. 2010); *Wall*, 184 S.W.3d at 742.

The Confrontation Clause of the Sixth Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment, provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." *Crawford v. Washington*, 541 U.S. 36, 38, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004); *Langham*, 305 S.W.3d at 575 (citing U.S. CONST. amend. VI). Once a defendant objects to evidence under the Confrontation Clause, the burden shifts to the State to prove either that the evidence does not contain testimonial hearsay or that the evidence does contain testimonial hearsay but is nonetheless admissible. *De la Paz*

*v. State*, 273 S.W.3d 671, 680-81 (Tex. Crim. App. 2008) (citing *Crawford*, 541 U.S. at 68).

Here, the parties had decided prior to trial not to discuss the initial 2017 test of the blood sample without first approaching the bench. During Appellant's cross-examination of the forensic scientist, the following exchange took place:

Counsel:       So if you have samples that come in from police agencies or where ever they come from, then whatever -- the sample you get is only as good as the one you're sent. Would you agree with that?

Witness:       Yes.

Counsel:       Are there things that can happen to samples, especially over time, that can alter what the ethanol level was in them from the very beginning, when they were first drawn?

Witness:       Yes.

Counsel:       What?

Witness:       If a tube has been previously opened, then we typically expect to see a decrease in the ethanol concentration because the vacuum on the tube has been no longer maintained once it's been opened for the first time, which is why when we receive tubes we make sure that it doesn't look like they've been opened because that means it could have been tampered with.

After the cross-examination, the State argued to the court that Appellant had opened the door to testimony about the first test. The prosecutor said:

The Defense Counsel has brought up the fact that [Appellant's blood sample] has been to the lab twice. It seems like the entire crossing [sic] examination is based on the fact that the storage and the deterioration of -- basically, this sample hasn't been tested in a year. And thus the results are, I'm assuming, fallible -- are not up to par, so-to-speak. So we feel like that is a false impression with the jury. If -- we would ask that we be able to get into the first sample, and if not, the number. Ms. Davids [sic] has reviewed the prior analyst's work. She's aware of what the results are. So if not specifically the number, to be able to testify that, in fact, that there -- she is

4

aware of what it was and that the variation between the two are reasonable under the circumstances.

Defense counsel responded that the jury had already heard that the police officer sent the sample to the lab the prior year. Further, counsel argued, the witness was very careful in her testimony and counsel was very careful in his wording to ensure no mention was made of the initial test. Counsel said, "I don't think the jury in any way, shape, or form thinks this—this blood was tested before, at this time . . . . So, I don't understand why the—they would think that I opened the door." After hearing additional argument and the specific questions and answers the State sought to introduce, the court overruled Appellant's objection under the Confrontation Clause and granted to Appellant a running objection on that basis.

Thereafter, the State engaged in the following exchange with the forensic scientist:

Prosecutor: Counsel showed you a sheet of paper that dealt with the custody -- chain of custody, correct?

Witness: Correct.

Prosecutor: Okay. And y'all had talked about it and you mentioned that the blood had been taken to your lab a previous time before?

Witness: Yes.

Prosecutor: Correct? Back in 2017?

Witness: Yes.

Prosecutor: Okay. Is it -- so is it true the blood was tested back in 2017?

Witness: Yes, it was.

Prosecutor: Okay. The individual that tested the blood, is he at your company any longer?

Witness: No, he is not.

Prosecutor:   Okay. After you performed your analysis, did you review his analysis?

Witness:       Yes, I did.

Prosecutor:    Okay.  And were you able to see his report?

Witness:        Yes, I was.

Prosecutor:    Okay.   And based on your training and based on your experience, the number that you came up with and the number that he came up with, were they a reasonable variance between the two?

Witness:        Yes, they were.

Prosecutor:    Okay. Based on those two numbers, do you -- was there any indication that the blood had been contaminated or tampered with?

Witness:        Not to my knowledge, no.

Defense counsel then questioned the scientist on redirect, asking, "And then this blood came back to you a year later, and it had been—as opposed to opening the one that hadn't been tested, you opened the one that had been tested?"  The witness answered "Yes." Counsel questioned further, "Even though you had the one that had never been touched?"  The witness again answered affirmatively.

On appeal, Appellant argues this case is very similar to that described in *Burch v. State*, 401 S.W.3d 634, 636-37 (Tex. Crim. App. 2013).   There, the defendant was arrested by a police officer who saw him with drugs and paraphernalia.  *Id.* at 635-36.  The defendant was indicted and tried for possession of cocaine with intent to deliver.  *Id.*  During the trial, the State offered into evidence a one-page lab report that said, among other things, that the contents of four plastic bags were tested and contained cocaine in an amount of 1.38 grams.  The report was signed by an analyst and a reviewer.  The reviewer was called as a witness at trial, but the analyst was not because she did not work for the company by the time of trial.  *Id.*  The Court of Criminal Appeals agreed with

the appellate court that the admission of the report violated the defendant's rights under the Sixth Amendment because the record did not show the defendant had an opportunity to cross-examine the analyst who tested the cocaine. *Id.* at 637. The reviewer did not have personal knowledge that the tests were performed correctly or that the tester did not fabricate the results. *Id.* As such, cross-examining the reviewer did not satisfy the defendant's constitutional rights. *Id.*

Appellant argues the same is true here because he had no opportunity to cross-examine the analyst who conducted the first test. Instead, he was only able to cross-examine the second analyst and she could say only that she reviewed the first analysis, that her result had a reasonable variance based on her training and experience and that, in her opinion, the results indicated there was no contamination or tampering with the sample. Therefore, Appellant asserts, the trial court erred in admitting the forensic scientist's testimony over his objection.

The case before us is distinguishable from *Burch.* First, the initial analyst's report was not entered into evidence like the report was in *Burch.* Rather, the court permitted only statements made by and the lab report completed by the second analyst.[3] Appellant had the opportunity to cross-examine the second analyst and did so. The statements Appellant contends violated his constitutional rights constituted the opinion of the second analyst about the reasonable variance in the tests and the implication of that variance.

---

[3] We agree with Appellant that the Confrontation Clause applies to analysts' reports created for use in a criminal proceeding. *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 129 S. Ct. 2527, 174 L. Ed. 2d 314 (2009). We agree also that the Confrontation Clause prohibits the introduction of a testimonial forensic laboratory test report through the in-court testimony of a scientist who neither conducted nor observed the test. *Bullcoming v. New Mexico*, 564 U.S. 647, 131 S. Ct. 2705, 180 L. Ed. 2d 610 (2011). Here, however, the State did not seek to directly introduce the first analyst's report or results.

The actual results of the first test, the first analyst's personal knowledge, and any fabrication of those results were not implicated here as they were in *Burch.*

This situation is more closely analogous to that in *Hutcherson v. State,* 373 S.W.3d 179, 183 (Tex. App.—Amarillo 2012, pet. ref'd), in which the court permitted the testimony of a doctor. The court concluded that while the doctor's conclusions were largely based on his discussions with an absent doctor, the testifying doctor did not testify as to the absent doctor's conclusions and the absent doctor's autopsy report was not entered into evidence. *Id.* Therefore, the testifying doctor's testimony did not violate the defendant's confrontation rights because it was not testimonial hearsay. *Id.* The testifying doctor testified about his opinion regarding the cause of the victim's death and was subject to cross-examination regarding the bases for that opinion. *Id.* Here, only the lab report of the second analyst was admitted into evidence. And, like *Hutcherson,* the second analyst testified to her testing, her results, and her opinions about those results. The only reference to the first analyst's results was when the second analyst testified that the variance between her test results and those of the first test were reasonable. This was her opinion and she was available for, and subjected to, cross-examination on that opinion.[4]

Furthermore, the State argues Appellant opened the door to the complained-of testimony and cannot now raise violation of his Sixth Amendment rights. During Appellant's cross-examination of the forensic scientist, he asked her about the samples she received and confirmed that those samples had been sent to the lab in 2017, then

---

[4] We note that the "Confrontation Clause is not violated merely because an expert bases an opinion on inadmissible hearsay." *Hutcherson*, 373 S.W.3d at 184 (citation omitted). Here, the only hearsay element of the testifying expert's testimony was that a prior undisclosed result inferentially supported her conclusion that her new result was reliable.

sent back to the police department, then were returned to the lab in 2018, and then returned again to the police department. He discussed with her the testing methods, her results, and questioned her about the possibility of issues with storage and the production of ethanol in blood samples over time. He reiterated that she received the sample tested a year after Appellant's arrest. After that testimony, the State approached the bench and argued Appellant had left a false impression with the jury that there was something wrong with the blood sample. The State asserted Appellant had opened the door to the testimony of which he now complains through his questioning. We agree.

"Otherwise inadmissible evidence may be admitted if the party against whom the evidence is offered 'opens the door'. . . ." *McClenton v. State*, 167 S.W.3d 86, 94 (Tex. App.—Waco 2005, no pet.) (citing *Schutz v. State*, 957 S.W.2d 52, 71 (Tex. Crim. App. 1997) (quoting *Bush v. State*, 773 S.W.2d 297, 301 (Tex. Crim. App. 1989); *Clay v. State*, 102 S.W.3d 794, 797 (Tex. App.—Texarkana 2003, no pet.); *Bell v. State*, 867 S.W.2d 958, 962 (Tex. App.—Waco 1994, no pet.). In *McClenton*, the defendant argued the trial court erred in admitting testimony by an officer concerning statements made by co-defendants and accomplices. *McClenton*, 167 S.W.3d at 93. During the cross-examination of the officer, counsel asked questions about one of the co-defendant's statements. *Id.* The court agreed with the State that the defendant had opened the door to permit the State to ask the officer more questions about that co-defendant's statement. *Id.* at 93-94.

As noted here, it was Appellant who asked about the first blood test and implied through his questions that there was something wrong with the second test due to tampering or the passage of time. Based on the facts and circumstances of this case,

9

the trial court did not err in concluding Appellant opened the door to the State's clarification of that issue. We overrule Appellant's first issue.

### ISSUE TWO—ASSESSMENT OF EMERGENCY MEDICAL SERVICES FEE

By his second issue, Appellant challenges the assessment against him of a $100 "Emergency Medical Services" fee,[5] arguing the statute permitting such a fee is facially unconstitutional. The State candidly agrees with Appellant's contention, stating modification of the trial court's judgment to delete that fee is the proper remedy. We also agree.

The Second Court of Appeals has already determined the statute under which the Emergency Medical Services fee is assessed, Texas Code of Criminal Procedure article 102.0185(a),[6] is facially unconstitutional. *Casas v. State*, 524 S.W.3d 921, 923, 925-27 (Tex. App.—Fort Worth 2017, no pet.) ("Neither the statute authorizing the collection of the emergency-services cost nor its attendant statutes direct the funds to be used for a legitimate, criminal-justice purpose; therefore, it is a tax that is facially unconstitutional."). As the State suggested, the proper remedy is to modify the judgment by subtracting the $100 Emergency Medical Services fee from the total costs assessed in the judgment. *Albrecht v. State*, No. 02-16-00316-CR, 2018 Tex. App. LEXIS 119, at *2 (Tex. App.—Fort Worth Jan. 4, 2018, no pet.) (mem. op., not designated for publication) (modifying trial court's judgment by subtracting $100 Emergency Medical Services fee from total assessed court costs).

---

[5] The *Bill of Cost* denotes this as a "Emerg Med Serv" fee in the amount of $100.

[6] *See* TEX. CODE CRIM. PROC. ANN. art. 102.0185(a) (West 2018).

10

We sustain Appellant's second issue and will modify the judgment and any supporting documentation of court costs and fees to delete the $100 Emergency Medical Services fee.

### ISSUE THREE—ASSESSMENT OF CRIME VICTIM'S COMPENSATION FEE

Through his third issue, Appellant advances a challenge to the assessment against him of a $45 "Crime Victim's Compensation Act" fee.[7] He contends the trial court abused its discretion in assessing this fee because Appellant was assessed $133 in court costs, a fee that already encompassed an amount to be distributed to the fund for compensation to victims of crime. Again, the State candidly agrees, noting that modification of the trial court's judgment to delete that fee is the proper remedy.

Under section 133.102 of the Local Government Code, a person convicted of a felony is required to pay court costs of $133. TEX. LOC. GOV'T CODE ANN. § 133.102(a)(1) (West 2016). That section allocates the $133 to several accounts and funds and directs the comptroller to distribute the costs to the funds listed in the subsection. TEX. LOC. GOV'T CODE ANN. § 133.102 (b), (e). One of those funds is for "compensation to victims of crime." TEX. LOC. GOV'T CODE ANN. § 133.102(e)(10).

The Second Court of Appeals has determined that section 133.102 requires the assessment of the fee for compensation to the victims of crime fund to be made part of the $133 cost rather than through a separately-charged cost. *Smith v. State*, Nos. 02-16-00412-CR, 02-16-00413-CR, 2017 Tex. App. LEXIS 4810, at *4 (Tex. App.—Fort Worth May 25, 2017, pet. ref'd) (mem. op., not designated for publication) (citing TEX. LOC. GOV'T CODE ANN. § 133.102(a)(1), (e)(10); *Aviles-Barroso v. State*, 477 S.W.3d 363, 398-99

---

[7] The *Bill of Cost* denotes this as a fee of $45.00 for "C.V.C.A."

(Tex. App.—Houston [14th Dist.] 2015, pet. ref'd) (noting the statute indicates that these fees are part of the mandatory $133 and thus, modification of the judgment to delete a crime victim's compensation fee that a court assessed outside the $133 cumulative cost was proper); *Owen v. State*, 352 S.W.3d 542, 548 n.10 (Tex. App.—Amarillo 2011, no pet.) (noting that the fee for compensation to victims of crime is "part of the $133 consolidated fee to be assessed upon conviction of a felony")).

We sustain Appellant's third issue and modify the trial court's judgment to delete the $45 fee assessed for "C.V.C.A."

### CONCLUSION

Having overruled Appellant's first issue and sustained his remaining two issues, we modify the trial court's judgment to delete the Emergency Medical Services fee in the amount of $100 and the Crime Victim's Compensation Act fee in the amount of $45, and affirm the trial court's judgment as modified.

Patrick A. Pirtle
Justice

Do not publish.