**AFFIRM; Opinion issued March 6, 2013.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

---

## No. 05-11-01300-CR

---

### GUADALUPE JESUS HERNANDEZ, Appellant
### v.
### THE STATE OF TEXAS, Appellee

---

On Appeal from the 194th Judicial District Court
Dallas County, Texas
Trial Court Cause No. F08-30917-M

---

## OPINION
Before Justices Lang-Miers, Myers and Richter[1]
Opinion by Justice Richter

A jury convicted appellant of murder and assessed punishment of forty years' imprisonment and a $5000 fine. In five issues on appeal, appellant contends the trial court erred in admitting his recorded statement into evidence, in refusing to submit the issue of voluntariness to the jury, in permitting the State's expert to testify as to cause of death when he did not perform the autopsy, and in allowing the introduction of extraneous offense evidence during the punishment phase without notice to appellant. Appellant further contends that the combination of these alleged errors constitutes cumulative error. Finding no reversible error, we affirm the trial court's judgment.

---

1. The Hon. Martin E. Richter, Retired Justice, Sitting by assignment

## Background

Billy Clifton resided in the same apartment complex as appellant. On the day of the offense, he attempted to stop appellant from parking in a parking spot that had been reserved for a resident with a broken leg. Appellant did not want to move his car, and an argument ensued. At the conclusion of the argument, appellant went upstairs to the apartment he shared with Melanie Olivas. Clifton and the passenger in appellant's vehicle, Dillard Tornes, remained outside talking. Appellant emerged from his apartment with a rifle and shot at Clifton and Tornes. Both Tornes and Clifton initially retreated to their apartments, but Tornes later walked to appellant's apartment to try to calm him. As Tornes reached the staircase leading to appellant's apartment, he observed appellant descending the stairs with the rifle. At the same time, Clifton re-emerged from his apartment, and was shot.

Appellant returned to his apartment and informed Olivas that he had shot Clifton. Appellant also called his sister and admitted that he had killed Clifton. When a policeman knocked on appellant's door, he did not answer. But shortly thereafter, appellant emerged from his apartment and announced "I did it; I shot him." Appellant was arrested, and informed the arresting officers that the rifle was under the mattress in the bedroom. During custodial interrogation, appellant admitted he shot Clifton. Live .22 caliber ammunition was found in the rifle case, and a spent .22 caliber casing was found at the crime scene. Gunshot residue, consistent with discharging a firearm, was found on appellant's hand. At trial, the Medical Examiner testified that Clifton died as a result of the gunshot wound.

After hearing all of the evidence, a jury convicted appellant of murder and assessed punishment at forty years' imprisonment and a $5000 fine. This appeal followed.

# ANALYSIS

### Appellant's Statement

In his first issue, appellant maintains the trial court erred in admitting his recorded statement into evidence because the State failed to provide defense counsel with a copy of the statement at least twenty days before trial in accordance with Tex. Code Crim. Proc. Ann. art. 38.22§3(a)(5) (West 2005). The State responds that there was no error, or alternatively, any error was harmless.

We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Oprean v. State*, 201 S.W.3d 724, 726 (Tex. Crim. App. 2006); *Burden v. State*, 55 S.W.3d 608, 615 (Tex. Crim. App. 2001). An appellate court will not reverse a trial court's ruling unless that ruling falls outside the zone of reasonable disagreement. *McCarty v. State*, 257 S.W.3d 238, 239 (Tex. Crim. App. 2008); *Zuliani v. State*, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003).

The admissibility of a defendant's oral statements is governed by article 38.22, section 3 of the code of criminal procedure. Tex. Code Crim. Proc. Ann. art. 38.22, § 3 (West 2005). According to article 38.22, section 3(a)(5), a defendant's recorded oral statements, made as a result of custodial interrogation, are not admissible unless, "not later than the 20th day before the date of the proceeding, the attorney representing the defendant is provided with a true, complete, and accurate copy of all recordings of the defendant made under this article." *Id.* However, the State is not required to "give" defense counsel a copy of any recorded statements; rather, it is required to "provide access" to the statements. *Lane v. State*, 933 S.W.2d 504, 515-17 (Tex. Crim. App. 1996); *see also McClenton v. State*, 167 S.W.3d 86, 90 (Tex. App.—Waco 2005, no pet.); *Tinker v. State*, 148 S.W.3d 666, 672 (Tex. App.—Houston [14th Dist.] 2004, no pet.). As long as defense counsel is informed of the existence of the recording and is permitted

reasonable access to a copy, the purpose of article 38.22, section 3(a)(5) has been met. *Lane*, 933 S.W.2d at 516; *see also McClenton*, 167 S.W.3d at 90; *Tinker*, 148 S.W.3d at 672.

In the present case, the Affidavit for Arrest Warrant referenced the interview with appellant and the fact that the interview was captured on a DVD. The case was re-set for trial on many occasions and at least three different lawyers were appointed for appellant. Two years after the arrest warrant, defense counsel requested a pre-trial hearing on numerous issues, including the voluntariness of appellant's statement. The court conducted a hearing on the motion approximately five months before trial. During the hearing, appellant's trial counsel stated that he had copies of the police reports. Then, at trial, defense counsel objected to the introduction of the DVD into evidence because he had only obtained a copy of the DVD four days before trial. Counsel argued "Statute says it's their job to give me a copy of it 20 days before trial." In response, the prosecutor noted that he was new to the case, but the previous prosecutor had provided defense counsel with a copy of the DVD. The State also noted that the Dallas County District Attorney's Office maintains an open file policy, and counsel could have reviewed the video at any time. The new prosecutor further informed the court that while he had not been asked about the DVD until two weeks before trial, it had always been available for defense counsel's review. The trial court overruled the objection.

Appellant insists that the State is obligated to do more than provide access, and instead must actually serve defense counsel with a copy of the evidence. This argument is misplaced. The State is only required to provide access to the recording. *Lane,* 933 S.W.2d at 515—17. And facts such as those present in the instant case — an investigative report referencing a DVD coupled with an "open file policy" — have been deemed sufficient to meet the State's burden to provide the defense access to the recording. *See Monroe v. State*, Nos. 05-07-00164-69 CR, 2008 WL 2376990 at * 3 (Tex. App. — Dallas June 12, 2008, no pet.) (not designated for publication).

Therefore, we cannot conclude the trial court erred in admitting the recording into evidence. Appellant's first issue is overruled.

### *Voluntariness*

In his second issue, appellant argues the trial court erred in refusing to submit the issue of voluntariness to the jury. The State responds that an instruction was not required because the voluntariness of appellant's statement was not at issue, or alternatively, appellant did not suffer harm.

Article 38.21 of the code of criminal procedure provides, "A statement of an accused may be used in evidence against him if it appears that the same was freely and voluntarily made without compulsion or persuasion, under the rules hereafter prescribed." Tex. Code Crim. Proc. Ann. art. 38.21 (West 2005). The requirement that a statement be voluntary has been the law in Texas for many years. *See Oursbourn v. State*, 259 S.W.3d 159, 172 n. 40 (Tex. Crim. App. 2008) (citing *Cain v. State*, 18 Tex. 387, 389–90 (1857)).

The court of criminal appeals has explained that article 38.22, section 6 contemplates the following sequence of events: (1) a party notifies the trial judge that there is an issue about the voluntariness of the confession (or the trial judge raises the issue on his own); (2) the trial judge holds a hearing outside the presence of the jury; (3) the trial judge decides whether the confession was voluntary; (4) if the trial judge decides that the confession was voluntary, it will be admitted, and a party may offer evidence before the jury suggesting that the confession was not in fact voluntary; (5) if such evidence is offered before the jury, the trial judge shall give the jury a voluntariness instruction. *Oursbourn*, 259 S.W.3d at 175.

Under article 38.22, there is no error in refusing to include a jury instruction when there is no evidence before the jury to raise the issue. *See Miniel v. State*, 831 S.W.2d 310, 316—17 (Tex. Crim. App. 1992). Before the requirement is triggered, some evidence must be presented

that raises the voluntariness issue. *Butler v. State*, 872 S.W.2d 227, 236 (Tex. (Tex. Crim. App. App. 1994). "Only when some evidence is presented that a confession is not voluntary is the matter put in issue." *Miniel*, 831 S.W.2d at 317.

Conversely, "[a]n instruction must be given if a reasonable jury, viewing the totality of the circumstances, could have found that the statement was not voluntarily made." *Vasquez v. State*, 225 S.W.3d 541, 545 (Tex. Crim. App. 2007); *see also Estrada v. State*, 313 S.W.3d 274, 299–300 (Tex. Crim. App. 2010) ("Assuming that appellant offered evidence before the jury suggesting that the confession was not in fact voluntary, we decide that appellant was not entitled to an Article 38.22, § 6 voluntariness instruction because no reasonable jury could find that the facts, disputed or undisputed, rendered him unable to make a voluntary statement."). A confession may be found involuntary when "the totality of the circumstances demonstrates that the confessor did not make the decision to confess of his own free will." *Green v. State*, 934 S.W.2d 92, 99 (Tex. Crim. App. 1996). "The ultimate question is whether the suspect's will was overborne." *Creager v. State*, 952 S.W.2d 852, 856 (Tex. Crim. App. 1997)

A claim under section 6 that an accused's statement was involuntarily made may include situations involving police overreaching, youth, intoxication, illness or medication, mental incapacitation, or other disabilities. *See Oursbourn*, 259 S.W.3d at 172–73. Here, appellant emphasizes the evidence that he was under the influence of alcohol, but he points to no evidence of a causal connection between this fact and his alleged inability to knowingly and voluntarily waive his constitutional rights. *See Jones v. State*, 944 S.W.2d 642, 651 (Tex. Crim. App. 1996) (holding trial court did not err in admitting appellant's confession because appellant presented no evidence as to whether his alleged intoxication rendered him incapable of making a voluntary decision). On direct examination, Detective Joe Wood testified that appellant smelled of alcohol and slurred his speech. When Detective Wood asked appellant if he had been drinking, appellant

stated that he had consumed two beers the previous evening. When appellant's counsel cross-examined Detective Wood, he elicited the admission that there was no doubt that appellant was under the influence, but the Detective did not know "to what degree." Detective Wood also agreed that alcohol may affect a person's comprehension.

Viewing this evidence in the context of whether a reasonable jury could have found appellant's statement was not voluntarily made, we have some reservations about whether appellant was entitled to an instruction. But even if we assume appellant was entitled to an instruction, we cannot conclude appellant suffered harm.[2] Appellant admitted to shooting Clifton numerous times prior to his arrest. Olivas testified that appellant described the altercation in the parking lot, and when he returned to the apartment with the gun, appellant told her that he shot "him."Appellant's sister testified that appellant admitted to her that he shot Clifton. Detective Wood and the other officer on the scene both testified that appellant emerged from his apartment and announced, "I did it; I shot him." Therefore, because the record reflects that appellant's conviction did not turn on the admissibility of the statement appellant made to the police after his arrest, we conclude appellant suffered no harm. Appellant's second issue is overruled.

### Confrontation Clause

In his third issue, appellant argues the trial court erred in allowing Dr. Chester Gwin, a physician from the Medical Examiner's office, to give his expert opinion on the cause of Clifton's death. Appellant contends that, under *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009), and its progeny, the trial court violated his right to confront witnesses against him because Gwin neither performed nor was present during the autopsy. In essence, appellant

---

2.  Because appellant timely objected to the charge, we analyze harm in terms of whether it was "calculated to injure the rights of the defendant," which means that the accused has suffered some harm from the error. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985).

asserts that Gwin was acting as a "conduit" expert for another expert's opinion. We disagree with appellant's contention.

The Confrontation Clause of the Sixth Amendment of the United States Constitution, applicable to the states through the Fourteenth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI; *Pointer v. Texas*, 380 U.S. 400, 403 (1965). In *Crawford v. Washington*, 541 U.S. 36 (2004), the Supreme Court held that out-of-court testimonial evidence violates the Confrontation Clause unless the declarant is unavailable to testify and the defendant had a prior opportunity to cross-examine him. *Id.* at 68. The court noted, however, that not all testimonial hearsay is prohibited; the Confrontation Clause only prohibits the use of testimonial hearsay to prove the truth of the matter asserted. *Id.* at 56, n. 9. "Generally speaking, a hearsay statement is 'testimonial' when the surrounding circumstances objectively indicate that the primary purpose of the interview or interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *De La Paz v. State*, 273 S.W.3d 671, 680 (Tex. Crim. App. 2008).

In *Melendez-Diaz*, the court held that the admission of certificates of analysis, offered by the prosecution in a drug trial, stating that the material seized by police and connected to the defendant was cocaine of a certain quantity, violated the defendant's Sixth Amendment right to confront the witnesses against him. Specifically, the court found that the certificates of analysis were more appropriately described as affidavits and fell within the "core class of testimonial statements" covered by the Confrontation Clause. *Melendez-Diaz*, 557 U.S. at 310. The court reasoned that the certificates were sworn declarations of fact made for the purpose of establishing or proving some fact-namely, that the substance found was cocaine. *Id.* Accordingly, the affidavits were "made under circumstances which would lead an objective witness

8

reasonably to believe that the statement would be available for use at a later trial." *Id.* Because the analysts' affidavits were testimonial, the court found the analysts were witnesses for the purposes of the Sixth Amendment. *Id.* Therefore, unless the analysts were unavailable to testify at trial and the defendant had been afforded a prior opportunity to cross-examine them, the Confrontation Clause required that the prosecution call the analysts to testify. *Id.*

In *Bullcoming v. New Mexico*, 131 S.Ct. 2705, 2710 (2011), the Court addressed "surrogate testimony" in the context of a driving while intoxicated case. In that case, the forensic analyst assigned to test Bullcoming's blood sample created and signed the "Report of Blood Alcohol Analysis." *Id.* At trial, the State called a different analyst who was familiar with the laboratory testing procedure but did not participate in or observe the testing on Bullcoming's blood sample. *See id.* at 2709. The Court concluded the admission of the forensic analyst's report concerning blood alcohol concentration was a violation of Bullcoming's right to confrontation because a surrogate analyst, rather than the analyst who prepared the report, testified from the report. *Id.* at 2715–16.

More recently, in a plurality opinion, the Supreme Court concluded the admission of expert testimony regarding the results of DNA testing performed by non-testifying analysts did not violate the Confrontation Clause. *See Williams v. Illinois*, 132 S.Ct. 2221 (2012). In *Williams*, an expert witness relied on a DNA profile procured from a third-party laboratory, Cellmark, which had performed the DNA testing before a suspect was identified in the criminal investigation. *Id.* at 2227–28, 2234. The expert testified as to the following: Cellmark was an accredited lab; the Illinois state police lab occasionally sent forensic samples to Cellmark for DNA testing; the police lab sent vaginal swabs taken from the victim to Cellmark and later received those swabs back from Cellmark; and the Cellmark DNA profile matched a profile produced by the police lab from a sample of the defendant's blood. Because the witness had

9

personal knowledge of each of these matters, the Court held that her testimony did not violate the Confrontation Clause. *Id.* at 2227–29. Significantly, however, the plurality noted that the lab report about which the expert testified (the report was not admitted into evidence) was prepared before a suspect was identified. "The report was sought not for the purpose of obtaining evidence to be used against petitioner, who was not even under suspicion at the time, but for the purpose of finding a rapist who was on the loose." *Id.* at 2228. In addition, the plurality also noted that the profile was not inherently inculpatory. Thus, had Cellmark's DNA report been introduced into evidence, it likewise would not have violated the Confrontation Clause because it was not created for the primary purpose of obtaining evidence to use against the defendant; rather, it was created "for the purpose of finding a rapist who was on the loose." *Id.*

The underlying principle in the foregoing cases is clear; cloaking inadmissible testimonial hearsay as expert opinion does not redeem the character of the evidence. But appellant's argument that Gwin's testimony should be so categorized ignores an important distinction — whether the expert is giving an independent judgment or merely acting as a transmitter for the testimonial hearsay.

In the instant case, Dr. Pickard from the Medical Examiner's office performed the autopsy and prepared the autopsy report. But the State did not use Gwin to introduce the autopsy report into evidence. Instead, Gwin testified about the conclusion he reached after reviewing the autopsy report, the photographs, and the scene investigative history. Gwin explained that in cases of homicide, once a doctor in the Medical Examiner's office completes an autopsy and generates a report, the file is circulated to the other medical examiners to review for quality assurance purposes. The file includes the report, medical records, and investigative records, and photographs are available for review online. If the other medical examiners agree with the cause of death stated in the report, they have the option to sign the report to indicate their agreement

with the findings. Gwin received and reviewed the Clifton file and report after Pinckard completed the autopsy, and after conducting a review, signed to indicate his agreement with the conclusion as to cause of death.

Based on his review, Gwin concluded that Clifton died as a result of a "gunshot wound to the back or trunk," and the manner of death was homicide. Gwin affirmed that his opinion was based on his own independent conclusion derived from the information he reviewed.

During his testimony, Gwin also explained what the photographs he reviewed in forming his opinion depicted, including one showing a small caliber projectile and another showing where the gunshot entered through the victim's back. Significantly, appellant's counsel not only had an opportunity to cross-examine Gwin about his conclusions, but did so. Appellant's counsel elicited testimony that there was no stippling or soot found on the wound, which indicated that Clifton was not shot a close range. Counsel also examined Gwin about the fact that Pinckard was the doctor who performed the autopsy and prepared the report. Therefore, unlike the cases upon which appellant relies to support his argument, Gwin's testimony was not an after-the-fact explanation of Pinckard's opinion, but rather an explanation of his independent conclusion in the case. *See Jameson v. State*, 383 S.W.3d 309, 312 (Tex. App. — Dallas 2012, no pet.). Under these circumstances, we cannot conclude the trial court erred in admitting Gwin's testimony.

But even if the trial court erred in admitting the testimony, appellant has failed to identify what harm, if any, may have resulted. Because the complained-of error is of constitutional magnitude, we must be satisfied beyond a reasonable doubt that the claimed error did not contribute to the conviction or punishment. Tex.R.App. P. 44.2(a). In conducting this harm analysis, we consider the likelihood that the constitutional error adversely affected "the integrity of the process leading to the conviction." *Scott v. State*, 227 S.W.3d 670, 690 (Tex. Crim. App. 2007).

Nothing in this record supports such a conclusion. No one contested that Clifton died of a gunshot wound, so the cause of death was not at issue. Appellant admitted to several people that he shot the victim, and the police recovered both the gun and the ammunition. Moreover, as we have previously noted, appellant was not deprived of an opportunity to cross-examine Gwin about his conclusion, and exercised his right to do so. Therefore, even if we were to assume error, we cannot conclude appellant suffered harm. Appellant's third issue is overruled.

## Extraneous Offense

In his fourth issue, appellant argues the trial court erred in allowing the State to introduce evidence that he was arrested for fighting while out on bond in the present case. According to appellant, the State should not have been allowed to introduce testimony of an extraneous offense without first provviding him notice pursuant to article 37.07 of the code of criminal procedure. We are not persuaded by this argument.

The statute upon which appellant relies provides, "On timely request of the defendant, notice of intent to introduce evidence under this article shall be given in the same manner as required by Rule 404(b), Texas Rules of Evidence." Tex. Code Crim. Proc. Ann. art. 37.07, § 3(g) (West Supp. 2012). Thus, article 37.07, section 3(g) incorporates by reference the manner of notice required by Texas Rule of Evidence 404(b). *See Jaubert v. State*, 74 S.W.3d 1, 2 (Tex. Crim. App. 2002). Rule 404(b) provides in pertinent part as follows:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon timely request by the accused in a criminal case, reasonable notice is given in advance of trial of intent to introduce in the State's case-in-chief such evidence other than that arising in the same transaction.

Tex.R. Evid. 404(b). Therefore, both article 37.07, section 3(g) and rule 404(b) condition the admissibility of extraneous offense evidence on the State's compliance with the notice provision

found in the rule. TEX. R. EVID. 404(b); *Hernandez v. State*, 176 S.W.3d 821, 824 (Tex. Crim. App. 2005). The court of criminal appeals has held, however, that the notice requirement applies only to evidence introduced in the State's case in chief. *Jaubert*, 74 S.W.3d at 3. When the State presents extraneous offense evidence in rebuttal or during cross examination, appellant is not entitled to notice. *Id* at 4; *Torres v. State*, No.05-09-00241-CR, 2010 WL 2044900 at *2 (Tex. App. — Dallas May 25, 2010, no pet.) (not designated for publication).

Here, after appellant's mother testified about appellant's criminal history on direct examination, the State elicited testimony about the extraneous offense through cross-examination. Because the testimony was elicited on cross-examination, the State did not violate the statutory notice requirements and the trial court did not err in admitting the evidence. Appellant's fourth issue is overruled.

### Cumulative Error

In his fifth issue, appellant contends the combined effect of the four alleged errors discussed above constitutes cumulative error. We have concluded that there is no error. Therefore, it follows that there is no cumulative error. Appellant's fifth issue is overruled.

_____
MARTIN RICHTER
JUSTICE, ASSIGNED

DO NOT PUBLISH
TEX. R. APP. P. 47

111300F.U05



# Court of Appeals
## Fifth District of Texas at Dallas

### JUDGMENT

HERNANDEZ, GUADALUPE JESUS,
Appellant

No. 05-11-01300-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 194th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. F08-30917-M.
Opinion delivered by Justice Richter.
Justices Lang-Miers and Myers
participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 6th day of March, 2013.

_____
MARTIN RICHTER
JUSTICE, ASSIGNED